## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NATIONAL DAY LABORER ORGANIZING NETWORK; CENTER FOR CONSTITUTIONAL, RIGHTS, and IMMIGRATION JUSTICE CLINIC OF THE BENJAMIN N. CARDOZO SCHOOL OF LAW<br>Plaintiffs, | : : : : : : : | No. 10 Civ. 3488 (SAS)(KNF) |
| v. | : : | **DECLARATION OF** |
| UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT AGENCY, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, FEDERAL BUREAU OF INVESTIGATION, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, and OFFICE OF LEGAL COUNSEL<br>Defendants. | : : : : : : : : | **CRYSTAL RENE SOUZA** |

I, Crystal Rene Souza, depose and say as follows:

1. I am the Supervisory Freedom of Information Act (FOIA) Specialist for the Office of the General Counsel (OGC) at the U.S. Department of Justice, Executive Office for Immigration Review (EOIR). This declaration supplements and hereby incorporates, my two prior declarations submitted in this case, and is being submitted in support of defendants' motion for reconsideration and stay of the Court's February 7, 2011, Order (Order).

2. On or about February 19, 2010, EOIR mailed its response to the subject FOIA request stating that it was processing the request for documents under assigned FOIA control number 2010-5934.

3. Because the original request for records did not include a request for metadata, EOIR directed its components to gather records which contained the information listed in the FOIA request in accordance with its processes. EOIR directed employees to collect information from paper and electronic systems and to forward that information in paper to the FOIA Service Center for processing.

4. Prior to EOIR providing a response, on or about May 6, 2010, EOIR received notice that the plaintiffs had filed a Federal lawsuit regarding the FOIA request.

5. Due to the lawsuit, OGC provided additional resources and assistance to the FOIA Service Center. Resources which are not available for use in every FOIA case which may eventually require expanded searches.

6. On or about December 17, 2010, EOIR received an electronic mail message from the United States Attorney's Office, Southern District of New York, which contained a production order for "opt-out" records in the matter of NDLON et al. v. ICE et al., No. 10 Civ. 3488 (S.D.N.Y.) (SAS)(KNF).

7. The order included a new search cut-off date of October 15, 2010, and directed EOIR to search, process, and produce to plaintiffs, by January 17, 2011, records relating to the ability of states or localities to decline or limit participation in Secure Communities, including documents, memoranda, manuals, and communications referencing the technological capacity of ICE and the FBI to honor requests to opt-out, opt-in, or limit participation in Secure Communities.

8. In response to the "opt-out" order, EOIR, expanded its original search. Using the paper documents which were initially produced by components in response to the original search, EOIR identified an expanded list of key custodians and requested that a new search be electronically conducted to capture all electronically stored information. Additionally, because a new search was required due to the extended cut-off date, EOIR used the opportunity to capture email data in .pst format to preserve metadata and allow the metadata to be used in reloading the files into Microsoft Outlook with system metadata intact. Applying this new collection process was required in light of the modification to the original request. Therefore, ten months after its initial search, EOIR directed key custodians to collect electronic data with the metadata attached.

9. In order to process that collected data, EOIR was required to modify its normal collection and processing procedures. Custodians were directed to collect data in a manner that had never been deployed. This required assistance in the form of information technology (IT) help desk support instructing custodians on how to collect and download the information with metadata intact. Further, since EOIR was directed to produce electronic data in a searchable format with optical character recognition (OCR) capacity, EOIR determined that its regular process would not comply. Prior to this litigation, the Adobe software used for preparing electronic responses was not reliable when the OCR program was enabled. As a result, the .PDF documents would have contained modified content because the OCR software often dropped and misread content.

10. To comply with the order to produce the electronic information with OCR capability, EOIR FOIA Service Personnel became familiar with a software called Nuance which was installed across the Agency. This software allows EOIR to convert records into a OCR readable Adobe format. However, once the data is converted into that format metadata is lost, except to the extent such metadata would be visible on the printed email image. In order to apply FOIA exemptions, EOIR scans responsive records into a .PDF format. Thus cannot apply redactions and maintain the metadata in a manner that can be converted to a load file.

## Impact of Order on Future Productions

11. On or about February 3, 2011, EOIR received notice of the Court's order on production, which was followed by an amended order on or about February 7, 2011. EOIR has reviewed the amended order and its capability to comply with this order.

12. The Court's Order prescribes five production specifications for electronically-stored information (ESI) for all future productions: (a) all forms of ESI are required to include load files with nine fields; (b) e-mails must contain an additional ten fields; images of paper records must include Bates-numbered fields; (c) spreadsheets must be produced "in native format, with accompanying load files if the required metadata is not preserved in the native file," and spreadsheets in ".TIFF" format if plaintiffs can demonstrate why that is necessary; conversely, the Government may produce the spreadsheets in ".TIFF" format with load files containing applicable metadata fields, if it can demonstrate why native production of spreadsheets would inevitably reveal exempt information; and (d) "all of the other format requirements in the Proposed Protocol with respect to both ESI and hard copy...." *See* Order at 19-23.

13. The Court's Order imposes requirements that the EOIR FOIA Service Center is unable to meet in the context of future FOIA/Privacy Act releases, and has far-reaching consequences for EOIR's high volume FOIA/Privacy Act practice. Initially, production of email documents in native format is inconsistent with a FOIA units need to take redactions as explained above. Once a record is scanned into OCR software to apply redactions, the native format in the underlying load file relating to e-mail disappears.

14. Moreover, the official EOIR record is a paper record. The FOIA Service Center uses technology to request and obtain these paper files from its field offices and also gathers responsive information consisting of electronic records in response to FOIA requests in accordance with the 1996 E-FOIA amendments. EOIR's FOIA Service Center only preserves metadata where the initial request clearly consists of email records because the majority of our requests are for paper files which do not have metadata, which are converted to electronic images. Additionally, even when EOIR has been asked to produce email records, it has done so by scanning paper copies of the email and applying necessary redactions. In part, this process is done because EOIR's official record of e-mail is the paper record.

15. In this matter, the bulk of the information requested from EOIR consists of electronic e-mail messages. Generally, to apply FOIA authorized redactions, the FOIA Service Center's process is initiated by converting .PSTs into .PDF documents which are then uploaded into the FOIA database. This allows for the application of redactions and the maintenance of the response. EOIR has the capability to scan printed electronic mail messages into separate file folders with unique file names on a computer disk, convert the Adobe scanned .PDF format into a searchable text file format, place parent records with attachments, bates stamp the documents, and place records in a logical order, but it is not possible or feasible to require EOIR to reproduce all text records in static image single file format with attachments in every instance. At times the attachments are not provided by the responding office or component and often the attachments may not be responsive to the actual request. Typically,

when wholly non responsive information is part of a production in paper or produced electronically, EOIR separates the non responsive material from the responsive material. Since FOIA only requires the production of responsive material this is a practical process which may create the appearance of gaps. The Order precludes this process and revises the obligations under FOIA.

16. Currently, the EOIR FOIA Service Center releases documents responsive to a request in either paper or, upon request, CD-Rom(s) containing .PDF images of the responsive documents. EOIR does not scan and save each document on the CD-Rom as a separate file. This process will add additional steps to the EOIR process, which EOIR lacks the additional necessary resources to accomplish. This process would not be feasible with EOIR's existing resources.

17. The EOIR does not have Concordance or Opticon Software, and currently lacks the technology required to produce redacted versions of the emails in question in TIFF format with the metadata in load files in the format required by the Court's Order. In addition, EOIR currently has no money in its budget to procure e-discovery software to facilitate deduplication or processing of the e-mail it has collected. EOIR is also under a budget freeze which further impacts its ability to procure new resources.

18. The EOIR FOIA Service Center has seven full-time employees, including four FOIA specialists, and three contractors. Additionally, four full-time equivalent positions are comprised of individuals who have other duties in EOIR. Supplementing this process is an offsite contract which duplicates paper records. EOIR processed 17,300 FOIA requests in fiscal year 2010. Last year EOIR became the number one recipient of FOIA/Privacy Act requests in the Department of Justice. Fiscal year 2010 had an approximate increase of 20% over fiscal year 2009 and current fiscal year 2011 receipts exceed the 2010 requests. Applying the standards articulated in the Court's order would result in an unworkable burden on EOIR's FOIA processing, by imposing burdens both inside and outside the FOIA Service Center. While EOIR has modified it's instructions in the collection of emails and now requires preservation of metadata, this material is not easily stored in the FOIA database. In fact, much of the data is produced on CD-Roms which must then be transferred. This process required the establishment of new Outlook mailboxes to hold the data and will require additional personnel to monitor this new process. All of these requirements impact the ability of a limited staff to meet its responsibilities.

19. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Crystal Rene Souza
Supervisory FOIA Specialist
Executive Office for Immigration Review

February 18, 2011