IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL DAY LABORER ORGANIZING NETWORK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT AGENCY, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civ. A. No.10-Civ-3488 (SAS) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## **FOURTH DECLARATION OF DAVID M. HARDY**

I, David M. Hardy, declare as follows:

(1) This declaration supplements, and hereby incorporates, my three prior declarations submitted in this case, and is being submitted in response to the Court's February 7, 2011 Order ("Order") and supplemental February 15, 2011 Order, which directs the FBI to amend the formats of their prior releases and follow specific requirements for all future releases.[1]

(2) Based on the technological limitations of the FBI's FOIPA Document Processing System ("FDPS"), we are unable to comply at this time with many aspects of the Court's Order. With respect to all prior productions, the Court's Order requires defendants to "re-produce all text records in static image single file format together with their attachments and to re-produce

---

[1] The November 12, 2010 ["First"] Hardy Declaration explained the FBI's search for records responsive to plaintiffs' FOIA request; the January 26, 2011 Second Hardy Declaration explained the search cut-off date which the FBI used; and the January 28, 2011 Third Hardy [Vaughn] Declaration (inadvertently dated January 28, 2010) justified the application of FOIA exemptions for the FBI's January 17, 2011 release.

all spreadsheets in native format as requested by plaintiffs' July 23 e-mail . . . ."[2]  See, Feb. 7, 2011 Order at 16-17.  For future releases, the Order requires the FBI to produce Electronically Stored Information ("ESI") in .TIFF image format with corresponding load files and specifies that Excel spreadsheets be provided in native format with load files if the required metadata is not preserved in the native file.[3]  See, February 7, 2011 Order at 19-23.  However, the Order does permit the FBI to produce Excel spreadsheets in ".TIFF" format with load files containing the applicable metadata fields, if it can demonstrate why native production of spreadsheets would inevitably reveal exempt information.  In addition, in a supplemental Order issued on February 15, 2011, the Court clarified that "the absence of 'Full Text' from the list of required 'metadata fields' was an oversight."[4]  See Feb. 15, 2011 Order at 1.

### The FBI's FOIA Processing Procedures

(3)   The FBI's Central Records System ("CRS") enables it to maintain all pertinent information that it has acquired in the course of fulfilling its mandated national security and law

---

[2] The Order further stated that "if the Government can demonstrate why native production of spreadsheets would inevitably reveal exempt information, it may produce them in TIFF format, but must include load files." Order at 17.  To date, the FBI has made three releases in this case: August 16, 2010 (51 pages), November 18, 2010 (803 pages), and January 17, 2011 (2112 pages).

[3] Specifically, with respect to all future releases, including a pending February 25, 2011 production deadline, the Court's Order prescribes five production specifications pertaining to electronically-stored information ("ESI"): (a) all forms of ESI are required to include load files with nine fields; (b) e-mails must contain an additional ten fields; (c) images of paper records must include Bates-numbered fields; (d) spreadsheets must be produced "in native format, with accompanying load files if the required metadata is not preserved in the native file," and spreadsheets in ".TIFF" format if plaintiffs can demonstrate why that is necessary; and (e) "all of the other format requirements in the Proposed Protocol with respect to both ESI and hard copy . . . ." See Order at 19-23.

[4] The Court goes on to clarify that "[l]ike the nine metadata fields listed on pages 20-21, 'Full Text' - i.e., the body text of a document, attachment, or email message, extracted directly from the electronic source or derived by optical character recognition of scanned paper documents - should also accompany *any* production of a significant collection of static image ESI." See Feb. 15, 2011 Order at 1-2.

enforcement responsibilities. The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other case-related files compiled for law enforcement purposes, and was most recently estimated to contain in excess of 109.6 million records. This system consists of a numerical sequence of files broken down according to subject matter. The subject matter of a file may relate to an individual, organization, company, publication, activity, or foreign intelligence matter. Certain records in this system are maintained at FBIHQ; records which are pertinent to specific field offices are maintained in those field offices. The CRS serves as an investigative tool primarily managed and used by Special Agents to aid them in their counterterrorism, counterintelligence and law enforcement mission.

(4)  Once the FBI's Record/Information Dissemination Section ("RIDS") of the Records Management Division ("RMD") receives a FOIA request, it performs a CRS search to locate all potentially responsive records. Once it identifies potentially responsive case files, RIDS retrieves the paper file from either FBIHQ or from one of the FBI's 56 field offices. These paper case files indexed to the CRS are the official FBI record.[5]

(5)  Next, RIDS takes the material it has collected and scans it in to FDPS for further review, scoping and processing. The FDPS system is not designed or equipped to work with documents in their respective native formats, preserve parent-child relationships of documents, identify, preserve or process metadata, or create load files. While FDPS enables RIDS to manage and process FOIA requests by storing scanned images of FOIA requests and responsive FBI files, it is a one-dimensional system. Each document is scanned and converted to a Tagged Image File Format ("TIFF") as a static image. In addition, the FBI's scanning, conversion and

---

[5] However, due to the fast paced nature of the FBI's ongoing investigations, some records may not be indexed to the case file as they are created. If the FBI believes that additional files may exist that have not yet been indexed to the case file, then it will circulate a written request seeking any additional responsive "agency records." See First Hardy Declaration, ¶¶ 20-22.

uploading process cannot ensure that the parent-child relationship between documents is retained, either with respect to paper or electronic files. Although RMD tries to maintain orderliness in its scanning process, it cannot guarantee that attachments will follow their respective files. In the event that RIDS retrieves certain material in electronic format, those documents must be converted from their native electronic format (e.g., Excel) to ".TIFF" in order to be uploaded into FDPS.

(6)     FDPS is designed to redact unclassified as well as classified material – up to the "Secret" level. To give the FBI this capability to redact withholdings up to the "Secret" level, FDPS was designed in a way that files can only be uploaded as ".TIFF" images. When the FBI sought out an electronic processing solution in order to keep up with the increasing volume of FOIA/Privacy Act requests it receives annually, it needed to ensure that the selected system would protect against attempts to uncover asserted redactions, thereby leading to unauthorized leaks of sensitive law enforcement and classified information. That protection is paramount in light of the law enforcement sensitive and/or classified nature of the FBI's files. Thus, the primary – and the only – method for ensuring this protection has been to convert all documents (regardless of whether they are collected in paper or electronic format), into the ".TIFF" format prior to uploading the material in to FDPS.[6]

### Why The FBI Is Unable To Comply Fully With The Court's Order

(7)     With respect to its prior releases as well as future ones, the FBI is only capable of complying with portions of the Court's Order. Specifically, RIDS can (and will) divide and save

---

[6] One of the most challenging tasks for RMD in responding to this FOIA request has been the conversion of the thousands of Excel spreadsheets to ".TIFF" format. With the goal of reducing page counts by increasing how much spreadsheet data appears on one printed page, RMD staff had to develop a computer program to convert data into multi-page ".TIFF" format.

4

each document on the CD as a separate file and make the .pdf document searchable; and it can -- and already has -- reproduce[d] the documents in consecutively-numbered Bates stamp order.

(8)     With respect to the 12 Excel spreadsheets the FBI has released previously,[7] as well as 79 additional Excel spreadsheets to be released on February 25, 2011, RIDS can, with great difficulty and for this one production only, produce these Excel spreadsheets in ".TIFF" format with accompanying load files. RIDS has identified approximately 2600 spreadsheets which remain to be processed. For the February 25, 2011 production, the Criminal Justice Information Services Division ("CJIS") (the only division that has records responsive to plaintiffs' request) prioritized among the remaining spreadsheets, and identified a total of approximately 79 which are most responsive to the plaintiffs' Rapid Production List ("RPL") and which are not classified. RIDS determined that the only way it would be able to comply with the Order was to explore FBI-centric resources available outside of RMD. RIDS identified the existence of a limited pilot Clearwell software program being operated on the non-classified FBI network by the Financial Crimes Section ("FCS") at FBIHQ. FCS has agreed to train 15 FOIA analysts to run the 91 spreadsheets through the Clearwell program, break down each spreadsheet into a .TIFF image and a load file comprised of three files from the original record (.TXT file, .DAT file and .OPT file), and process them in order to assert any applicable FOIA exemptions. However, any future releases of Excel spreadsheets will not be in compliance with the Court's Order because RIDS will no longer have use of FCS's Clearwell software program after the February 25, 2011 production. FCS has informed RIDS that the Clearwell program has reached maximum capacity as a result of its ongoing investigative operations.

---

[7] The FBI previously released six Excel spreadsheets in its November 18, 2010 production and six Excel spreadsheets in its January 7, 2011 production.

(9) The FDPS system does not allow RIDS to process Excel documents, or any document, in its native file format. Release of documents in their native format would prohibit RIDS from exercising its FOIA statutory responsibilities, since FDPS lacks the technological capability to allow RIDS to assert any applicable FOIA exemptions on documents in their native format. Thus, release in native format would mean a release of raw, unredacted documents and a waiver of applicable FOIA exemptions.

(10) Similarly, FDPS is not capable of creating or generating load files. FDPS is not designed to allow RIDS to reproduce text records in static image single file format with attachments. Due to the inherent nature and high-volume of the FDPS scanning – conversion -- uploading process, the FBI is unable to guarantee that attachments will follow their respective files, despite attempts to maintain parent-child relationships among documents. Finally, although FDPS has the capacity to electronically Bates-stamp the documents sequentially (which the FBI has already done), it lacks the technical capability to include four additional fields to accompany images of paper records (1. Bates_Begin, 2. Bates_End, 3. Attach_Begin: 4. Attach_End).

(11) RIDS releases documents responsive to a request either in paper format, or upon request, CD-Rom(s) containing .pdf images of the responsive documents. Typically the CD-Rom will contain one large .pdf document or several large .pdf folders. Prior to this litigation, the FBI had never been asked – or required – to scan and save each document on the CD-Rom as separate files in .pdf searchable format. If the Court's ESI requirements Order were to be extrapolated and imposed as a requirement for the nearly 15,000 FOIA/Privacy Act requests the FBI receives annually, this would have a significant impact. Specifically, the FBI's

FOIA/Privacy Act processing operation would slow down significantly, and would impact severely the FBI's ability to respond to requests in a timely fashion.[8]

(12)   Nor does the FBI's current technology allow it to comply with the Court's Order concerning metadata. First, the FBI would be required to conduct a new search. Although originally CJIS provided approximately 99% of the material to RIDS in electronic format, at this time we are unable to ensure with certainty that the material captured all of the required metadata at the time of the initial search. Even if we were to redo the search, we would be unable to ensure that electronic versions of the same records still existed. Most importantly, even if this renewed search effort were to succeed in capturing most of the records in electronic format with the ESI information the Court has demanded, the FBI's FDPS system is technologically incapable of processing these documents for release to a FOIA requester in their native electronic formats with associated metadata.

(13)   In order to fully comply with the Court's Order, the FBI would be required to create or purchase a software program or platform such as Clearwell that would enable it to not only collect and process documents in the manner ordered by the Court, but would also guarantee protection of the FBI's law enforcement sensitive and/or classified information while permitting RIDS to exercise it statutorily imposed obligations under FOIA. Given today's budget climate – and a federal government operating solely on a continuing budget resolution – it is unclear where the FBI would obtain the necessary funding to either make such a purchase or to train its personnel on how to use any purchased program.

---

[8] In FY 2010, the FBI received 14,957 FOIA and Privacy Act requests, and responded to a total of 14,665 requests, producing in excess of 1.1 million pages, at a cost of $ 26,269,686.00. By contrast, the FBI recovered a mere $33,892.91 in costs, representing only 0.14% of the FBI's total costs of responding to FOIA/Privacy Act requests. See U.S. Department of Justice FOIA Annual Report for FY 2010, http://www.justice.gov/oip/annual_report/2010/sec5.pdf.

## CONCLUSION

(14) The FBI's efforts to respond to plaintiffs' voluminous FOIA request have already proven to be extraordinary, burdensome and unprecedented, and the FBI has identified, processed and released – and will continue to release – thousands of non-exempt pages of responsive material. The Court's Order, however, places the FBI in the untenable position of simply not being able to comply with a majority of the court-ordered production. Moreover, the stringent production framework of the Court's Order has significant and far-reaching consequences for the FBI's high-volume FOIA/Privacy Act practice generally.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of February, 2011.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia