**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NATIONAL DAY LABORER ORGANIZING
NETWORK; CENTER FOR CONSTITUTIONAL
RIGHTS; and IMMIGRATION JUSTICE CLINIC OF
THE BENJAMIN N. CARDOZO SCHOOL OF LAW,

Plaintiffs,

- against -

UNITED STATES IMMIGRATION AND CUSTOMS
ENFORCEMENT AGENCY; UNITED STATES
DEPARTMENT OF HOMELAND SECURITY;
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW;
FEDERAL BUREAU OF INVESTIGATION; and
OFFICE OF LEGAL COUNSEL,

Defendants.

No. 10 Civ. 3488 (SAS)
ECF Case

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**BY THE GOVERNMENT FOR A STAY PENDING APPELLATE REVIEW**
**OF THE COURT'S OPINION AND ORDER DATED FEBRUARY 7, 2011,**
**AND THE COURT'S SUPPLEMENTAL ORDER DATED FEBRUARY 14, 2011**

PREET BHARARA
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2761 / 2745 / 2728
Facsimile: (212) 637-2786 / 2686
Email:  christopher.connolly@usdoj.gov
          joseph.cordaro@usdoj.gov
          christopher.harwood@usdoj.gov

CHRISTOPHER CONNOLLY
JOSEPH N. CORDARO
CHRISTOPHER B. HARWOOD
Assistant United States Attorneys
        - Of Counsel -

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................4

ARGUMENT ............................................................................................................9

THE COURT SHOULD GRANT A STAY OF
THE ORDER PENDING APPEAL.............................................................................9

I.    The Government Will Present on Appeal a Substantial Case on
the Merits ....................................................................................................11

    A.    Plaintiffs' Belated Request for Metadata Is Unexhausted
and Impermissibly Expands the Scope of Their FOIA Request ...............11

    B.    The Court Incorrectly Determined That "Certain Metadata" Is
"Readily Reproducible" for FOIA Purposes……………………………13

        1.    The Court Failed to Develop a Record Concerning Whether the
Metadata Specified in the Order is "Readily Reproducible" .........13

        2.    The Court's Order Was Inconsistent with Rule 56(f) ...................16

    C.    The Federal Discovery Rules Are Inapplicable to FOIA Requests ...........18

    D.    A Substantial Issue Exists as to Whether Metadata is a "Record"
or an "Integral or Intrinsic Part" of a Record for FOIA Purposes ............20

II.    The Government Will Be Irreparably Injured Absent a Stay ...............................22

III.    Issuance of a Stay Will Not Substantially Injure Plaintiffs .................................24

IV.    The Public Interest Would Be Well-Served by a Stay...........................................24

CONCLUSION.........................................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                                     **Page**

*AFGE v. U.S. Dep't of Commerce*,
    907 F.2d 203 (D.C. Cir. 1990) ........................................................................... 21

*Aguilar v. Immigration & Customs Enforcement*,
    255 F.R.D. 350 (S.D.N.Y. 2008), ........................................................................ 19

*Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*,
    248 F.R.D. 556 (N.D. Ill. 2008) .......................................................................... 19

*Bloomberg L.P. v. Bd. of Governors of the Fed. Reserve Sys.*,
    649 F. Supp. 2d 262 (S.D.N.Y. 2009) ................................................................. 17

*Carlson v. U.S. Postal Serv.*,
    No. C-02-05471 RMW, 2005 WL 756573 (N.D. Cal. Mar. 31, 2005) ............ 17

*Ctr. for Envtl. Law v. Office of U.S. Trade Representative*,
    240 F. Supp. 2d 21 (D.D.C. 2003) ..................................................................... 11

*Ctr. for Nat'l Sec. Studies v. DOJ*,
    217 F. Supp. 2d 58 (D.D.C. 2002) ..................................................................... 23

*DOJ v. Reporters Comm. For Freedom of the Press*,
    489 U.S. 749 (1989) ............................................................................................ 22

*Edmonds v. DOJ*,
    405 F. Supp. 2d 23 (D.D.C. 2005) ..................................................................... 14

*Ferguson v. FBI*,
    957 F.2d 1059 (2d Cir. 1992) ............................................................................. 23

*Ford Motor Co. v. Edgewood Props., Inc.*,
    257 F.R.D. 418 (D.N.J. 2009) ............................................................................ 19

*Gillin v. IRS*,
    980 F.2d 819 (1st Cir. 1992) .............................................................................. 12

*Halperin v. CIA*,
    629 F.2d 144 (D.C. Cir. 1980) ........................................................................... 14

*Halpern v. FBI*,
    181 F.3d 279 (2d Cir. 1999) ............................................................................... 12

*HHS v. Alley*,
    129 S. Ct. 1667 (2009) ................................................................................. 23

*Jones v. FBI*,
    41 F.3d 238 (6th Cir. 1994) ......................................................................... 19

*Jordan v. DOJ*,
    No. 07-cv-02303-REB-KLM, 2009 WL 2913223 (D. Colo. Sept. 8, 2009) ................... 17

*Judicial Watch, Inc. v. DOJ*,
    306 F. Supp. 2d 58 (D.D.C. 2004) ................................................................. 14

*Kowalczyk v. DOJ*,
    73 F.3d 386 (D.C. Cir. 1996) ................................................................. 12, 16

*Landmark Legal Found. v. EPA*,
    272 F. Supp. 2d 59 (D.D.C. 2003) ................................................................. 17

*Laroche v. SEC*,
    No. C-05-4760 CW, 2006 WL 2868972 (N.D. Cal. Oct. 6, 2006) ............................ 17

*LaRouche v. Kezer*,
    20 F.3d 68 (2d Cir. 1994) .................................................................... 10, 22

*McClelland v. Andrus*,
    606 F.2d 1278 (D.C. Cir. 1979) ................................................................... 18

*Mich. Coal. of Radioactive Users, Inc. v. Griepentrog*,
    945 F.2d 150 (6th Cir. 1991) ..................................................................... 10

*Miscavige v. IRS*,
    2 F.3d 366 (11th Cir. 1993) ...................................................................... 17

*Mohammed v. Mukasey*,
    280 F. App'x 58 (2d Cir. 2008) ................................................................... 18

*Mohammed v. Reno*,
    309 F.3d 95 (2d Cir. 2002) ....................................................................... 10

*Nat'l Archives & Records Admin. v. Favish*,
    541 U.S. 157 (2004) ........................................................................... 18, 19

*Nat'l Council of La Raza v. DOJ*,
    411 F.3d 350 (2d Cir. 2005) ...................................................................... 23

*Network Enters., Inc. v. APBA Offshore Prods., Inc.*,
No. 01 Civ. 11765 (CSH), 2007 WL 398276 (S.D.N.Y. Feb. 5, 2007)...................... 11

*Nken v. Holder*,
129 S. Ct. 1749 (2009) ........................................................................... 10

*People for Am. Way Found. v. Dep't of Educ.*,
518 F. Supp. 2d 174 (D.D.C. 2007) ....................................................... 23

*Population Inst. v. McPherson*,
797 F.2d 1062 (D.C. Cir. 1986) .............................................................. 11

*Pray v. DOJ*,
902 F. Supp. 1 (D.D.C. 1995), *aff'd in part & remanded in part on other grounds*,
No. 95-5383, 1996 WL 734142 (D.C. Cir. Nov. 20, 1996)............................. 12

*Providence Journal Co. v. FBI*,
595 F.2d 889 (1st Cir. 1979) .................................................................. 23

*Sample v. Bur. of Prisons*,
466 F.3d 1086 (D.C. Cir. 2006) .............................................................. 17

*Thomas v. Office of U.S. Attorney*,
171 F.R.D. 53 (E.D.N.Y. 1997) ......................................................... 12, 13

*TPS, Inc. v. U.S. Dep't of Defense*,
330 F.3d 1191 (9th Cir. 2003) ................................................................ 17

*Truitt v. Dep't of State*,
897 F.2d 540 (D.C. Cir. 1990) ................................................................ 12

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
559 F.2d 841 (D.C. Cir. 1977) ......................................................... 10, 11

*Wilbur v. CIA*,
355 F.3d 675 (D.C. Cir. 2004) ................................................................ 11

*Williams v. Sprint/United Mgmt. Co.*,
230 F.R.D. 640 (D. Kan. 2005)............................................................... 20

*In re World Trade Ctr. Disaster Site Litigation*,
503 F.3d 167 (2d Cir. 2007) ................................................................... 10

## STATUTES

5 U.S.C. § 552(a)(3)(A) ................................................................................. 12, 20

5 U.S.C. § 552(a)(3)(B) ............................................................................. 13, 21, 22

5 U.S.C. § 552(a)(4)(B) ......................................................................... 6, 13, 16, 18

5 U.S.C. § 552(a)(6)(A)-(C) ............................................................................... 11

5 U.S.C. § 552(a)(6)(E) ..................................................................................... 15

5 U.S.C. § 552(f)(2) ..................................................................................... 3, 21

## RULES AND REGULATIONS

6 C.F.R. § 5.9(c) ............................................................................................ 11

28 C.F.R. § 16.9(c) ......................................................................................... 12

Fed. R. Civ. P. 34 ................................................................................ 2, 8, 18, 19

Fed. R. Civ. P. 56(f) ................................................................................... *passim*

Fed. R. Civ. P. 56(f)(1) .................................................................................. 17, 18

Fed. R. Civ. P. 56(f)(3) .................................................................................. 17, 18

Local Civ. R. 6.3 ............................................................................................ 9

## CONGRESSIONAL REPORTS

H.R. Rep. No. 104-795 (1996) ........................................................................ 21, 22

## OTHER AUTHORITIES

Order Amending Fed. R. Civ. P. (U.S. Apr. 28, 2010) ............................................... 16

The Sedona Principles: Best Practices Recommendations and Principles for
    Addressing Electronic Document Production (2d ed. 2007) .............................. 15, 20

U.S. Immigration and Customs Enforcement, *Secure Communities*, *available at*
    http://www.ice.gov/secure_communities (last accessed Feb. 21, 2011) ..................... 4

Defendants United States Immigration and Customs Enforcement ("ICE"), United States Department of Homeland Security ("DHS"), Federal Bureau of Investigation ("FBI"), Executive Office for Immigration Review ("EOIR"), and Office of Legal Counsel ("OLC") (collectively, "defendants" or the "Government"), by their attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion for a stay of the Court's Opinion and Order dated February 7, 2011[Docket # 41] (the "Order"), and Supplemental Order dated February 14, 2011 [Docket # 50] (the "Supplemental Order"), pending the Government's appeal of those orders.[1]

## PRELIMINARY STATEMENT

This case presents an issue of first impression for the federal courts: whether an agency processing a Freedom of Information Act ("FOIA") request that broadly seeks "any and all records" related to a particular topic must search for, review, and produce the metadata associated with responsive electronic records. Plaintiffs did not make a request for metadata fields associated with records responsive to their FOIA request until ten months after submitting the request, eight months after litigation commenced, and two months after defendants made their sixth production of documents. Nevertheless, the Court directed the Government to produce several categories of metadata in electronic format for all future productions in this case, the first of which is scheduled to occur on February 25, 2011, just 18 days after entry of the Court's Order. The Court did so based on its finding that "certain metadata" is an "integral or intrinsic part of an electronic record" and thus is "*presumptively* producible" in the FOIA context. However, the Court never received formal briefing on the issue—only an exchange of pre-motion conference letters—and no factual record was developed prior to the ruling.

---

[1] Except in direct citations, and where otherwise noted, the Government throughout this brief refers to both orders collectively as the "Order."

A stay of the Court's Order pending appeal should be granted.  As set forth below, the Government on appeal can demonstrate a substantial case on the merits.  The Court's holding that certain metadata must be produced in this case is erroneous because, at the threshold, plaintiffs never requested metadata in their FOIA request.  The Order thus ignores the fundamental principles that FOIA requests must be administratively exhausted prior to the commencement of suit, and that FOIA requesters may not add new demands to a request during litigation.  While the Court analogized to Fed. R. Civ. P. 34 when discussing the Government's obligations, Rule 34 does not govern the processing of FOIA requests.  And even if it did, litigants who make belated requests for metadata in the civil discovery context, as plaintiffs did here in the FOIA context, are not entitled to that metadata.

The Court's directive that the Government must produce certain metadata in future productions was, for all intents and purposes, a ruling that the Government has not complied with its FOIA obligations, and thus a grant of partial summary judgment.  Such rulings, which are injunctive orders, routinely are made in the context of fully submitted motions for summary judgment.  For example, in the now-withdrawn February 3, 2010 order, the Court referred to five cases involving a "form or format" dispute, all of which involved summary judgment motions.  The Court's Order similarly amounted to a grant of partial summary judgment—without agency declarations, even though FOIA itself provides that agencies will have an opportunity to submit affidavits on the issue of reproducibility and mandates that courts give those affidavits "substantial weight," and without providing the Government notice and an opportunity to respond, or identifying the material facts genuinely not in dispute, pursuant to Rule 56(f).

More fundamentally, the Court's holding that certain metadata is an "integral or intrinsic part of an electronic record" and thus "*presumptively* producible" under FOIA is incompatible

with the statutory definition of the term "record."  FOIA provides that a "record" includes "any information that *would be an agency record* subject to the requirements of FOIA when maintained by the agency in any format, including an electronic format."  5 U.S.C. § 552(f)(2) (emphasis added).  Even though an electronic record of a memorandum or e-mail, for example, might contain the metadata specified in the Order, that metadata is non-record information residing within the electronic file, not part of the record itself.  If the result were otherwise, the agency would be required to search for and process metadata associated with *each* electronic iteration of a particular record (*e.g.,* a memorandum or e-mail existing in different files, or residing on different computers) because each iteration would contain distinct metadata.  That result would yield an administrative disaster that Congress could not have intended and would not further the purpose of FOIA, which is to open agency action to public scrutiny.

Furthermore, the Government will be irreparably harmed if it is forced to comply with the Court's Order while its appeal is pending.  In the FOIA context, disclosure of records that are the subject of an appeal will alter the status quo and moot the appeal as to the records disclosed.  Courts regularly grant stays in FOIA cases for that reason to ensure meaningful appellate review. In addition, the Court's Order will require FBI to re-do its entire search, and result in enormous expenditures of funds by ICE.  Plaintiffs, by contrast, will not be harmed by a stay of the Order pending appeal: they cannot be heard to complain that the metadata or format of production that they waited ten months to request is now urgent to them.  Moreover, the Government will produce responsive records to plaintiffs on February 25, 2011, and thereafter.  Finally, the public interest clearly weighs in favor of a stay.  Given the sea change in FOIA practice that could result from this Order, the Second Circuit should have an opportunity to conduct a full review before the Government is required to produce the records that are the subject of the Order.

Accordingly, the Court should grant a stay pending the Government's appeal of the Order or, in the alternative, should grant an interim stay of those orders pending the disposition of the Government's motion for a stay in the Second Circuit.

**BACKGROUND**

On or about February 3, 2010, plaintiffs submitted identical FOIA requests (the "Request") to defendants. *See* Declaration of Bridget P. Kessler ("Kessler Decl."), dated October 28, 2010, Ex. A [Docket # 12]. The Request, which spans twenty-one single-spaced pages, contains wide-ranging demands for "any and all Records" relating to aspects of "Secure Communities," *see id.*, an immigration enforcement strategy that utilizes an existing information-sharing capability between DHS and the Department of Justice to quickly and accurately identify aliens who are arrested for a crime and booked into local custody. *See* Secure Communities, http://www.ice.gov/secure_communities (last accessed Feb. 21, 2011). The Request does not seek metadata, nor does it specify a form or format of production. *See* Kessler Decl., Ex. A.

Plaintiffs commenced the instant action on April 27, 2010. [Docket # 1.] Their complaint contained a lengthy summary of the records sought in the request, but nowhere mentioned "metadata." *See, e.g.,* Compl. ¶ 61. It was not until an e-mail from plaintiff's counsel on July 23, 2010, that any form or format of production was requested. *See* Order at 6; Declaration of Joseph N. Cordaro ("Cordaro Decl."), dated Feb. 21, 2011, Ex. A. But even that e-mail did not mention "metadata." It only asked that ICE "(1) produce the responsive records on a CD and, if possible, as an attachment to an email, (2) save each document on the CD as a separate file, (3) produce excel documents in excel format and not as pdf screen-shots, and (4) produce all documents with consecutively numbered bate [sic] stamps." *See id.*

Another five months passed before plaintiffs made the metadata demand at issue.  In the interim, the Government made substantial productions, including four ICE productions totaling 1989 pages, *see* Declaration of Catrina Pavlik-Keenan, dated Jan. 26, 2011, at ¶ 34 [Docket #30], and two FBI productions totaling 854 pages, *see* Fourth Declaration of David M. Hardy, dated Feb. 18, 2011 ("Fourth Hardy Decl.), at ¶ 2 n.2.  Plaintiffs moved for a preliminary injunction on October 28, 2010, seeking the production of certain records pertaining to the ability of states and localities to "opt out" of Secure Communities, but did not seek metadata or a form or format of production.  [Docket ## 10-12, 21-22.]  On December 9, 2010, the Court held a hearing on this motion, at which plaintiffs called a witness to testify as to the alleged urgency of the opt-out records.  Metadata and format issues were not mentioned at that time.  *See* Cordaro Decl., Ex. B (transcript of December 9, 2010 hearing).  On December 17, 2010, the Court issued an order setting January 17, 2011 as the deadline for defendants to complete their opt-out production, with the next production scheduled for February 25, 2011.  [Docket # 25.]

On December 22, 2010, *ten months* after submitting their FOIA Request to defendants, plaintiffs proposed a "protocol" setting forth numerous demands concerning the form and format of production for both electronic and paper records, and requesting several fields of metadata associated with those records.  *See* Cordaro Decl., Ex. C.  On January 4, 2011, the Government responded by e-mail that the protocol was both untimely and unworkable.  *See id.*, Ex. D.

On January 6, 2011, presumably in accordance with section IV of the Court's individual practices, plaintiffs wrote a three-page letter to the Court requesting certain revisions to the December 17 order.  *See id.*, Ex. E.  Plaintiffs attached the protocol to their letter and requested that defendants be required to comply with the protocol for all future productions.  *See id*, Ex. E at 1-3 & Tab A.  Plaintiffs' letter also addressed unrelated grounds pertaining to defendants'

search cut-off dates, and procedural issues concerning a motion for summary judgment on the Government's claimed exemptions for the upcoming opt-out production.  *See id.*, Ex. E at 3.

The next day, the Government received the following e-mail from one of plaintiffs' attorneys: "I just received a call from Judge Scheindlin's clerk, who asked that I relay the following information to all counsel in the action.  A pre-motion hearing on Plaintiffs' letter from yesterday has been scheduled for next week, Wednesday 1/12, at 4:30 p.m."  *See id.*, Ex. F.

On January 11, 2011, the Government responded to plaintiffs' letter with its own three-page letter—also limited in length by the Court's individual practices—that addressed the three issues in plaintiffs' letter.  *See id.*, Ex. G.  The Government's letter stressed that the Court lacked authority to order injunctive relief absent an improper withholding of agency records, and there was no improper withholding of metadata because plaintiffs did not request it until ten months after submitting their Request.  *See id.*, Ex. G at 2.  Accordingly, the Government argued, the protocol should not apply to the upcoming January 17, 2011 production, or to any future productions.  *See id.*  The Government highlighted explicit language in FOIA providing that courts should accord "substantial weight" to declarations concerning whether a form or format of production is "readily reproducible," 5 U.S.C. § 552(a)(4)(B), and requested the opportunity to brief the issue in the context of a summary judgment motion.  *See* Cordaro Decl., Ex. G at 2.

At the pre-motion hearing the next day, January 12, 2011, the Court covered all three topics in plaintiffs' letter.  *See id.*, Ex. H (transcript of January 12, 2011 hearing).  With respect to the protocol and metadata, the Court acknowledged that the issue was "complicated" and that it was being asked "to figure out what is required of FOIA requesters."  *See id.*, Ex. H at 13.  The Government thereupon renewed its request for full briefing on the metadata issue.  *See id.*  When the Government pointed out that there was no controlling precedent on the issue, the Court

responded: "That's right.  You hit the mark.  There is no controlling precedent.  Somebody is going to have to explain this."  *Id.*, Ex. H at 13-14.

The Court ruled at the hearing that defendants would be required to produce Excel spreadsheets in native (.xls) format, based on the July 23 e-mail, and that "[n]ative means metadata."  *See id.,* Ex. H at 16.  The Court also ruled that the protocol would not be applicable to the opt-out production on January 17, 2011, because plaintiffs submitted the protocol too close to the production.  *See id.*, Ex. H at 32-33.  Those rulings appear in the Order.  When queried by plaintiffs' counsel as to whether the protocol would apply to productions beyond January 17, the Court replied: "I said that was the one thing I didn't rule on today.  I didn't decide what to do about the metadata issue, so to speak.  That I have to think about."  *Id.,* Ex. H at 53. With leave of the Court, *see id.*, plaintiffs submitted a follow-up letter on January 14, 2011, reiterating the arguments in their letter of January 6, 2011.  *See id.*, Ex. I.

On February 3, 2011, without further submissions from the parties, the Court issued an opinion and order [Docket # 39], which it withdrew the next day [Docket # 40].  On February 7, 2010, the Court issued the Order, which contained alterations and additions to the February 3 order.[2]  The Court held that "certain metadata is an integral or intrinsic part of an electronic record," and thus "'readily reproducible' in the FOIA context."  Order at 18.  Confronting the question of *which* types of metadata are an "instrinsic" part of an electronic record, the Court ruled that "metadata *maintained* by the agency *as part of an electronic record* is *presumptively* producible under FOIA, unless an agency demonstrates that such metadata is not 'readily

---

[2]    The Order contains a significant factual inaccuracy: there are statements to the effect that the Government's entire production prior to February 7, 2011 was unusable (*i.e.,* because it purportedly was non-searchable, failed to maintain parent-child relationships, and failed to separate documents into separate files).  *See* Order at 6, 24.  In fact, plaintiffs have conceded that the approximately 13,000-page opt-out production was "roughly in accordance" with the July 23 e-mail.  *See* Cordaro Decl., Ex. J at 41 (transcript of February 14, 2011 hearing).

reproducible.'"  *Id.*  The Court rejected the Government's argument that plaintiffs' request for metadata was untimely, stating that "Rule 34 [of the Federal Rules of Civil Procedure] surely should inform highly experienced litigators as to what is expected of them when making a document production in the twenty-first century."  *Id.* at 16.

The Court ruled that all future productions must include load files containing the following metadata fields: Identifier, File Name, Custodian, Source Device, Source Path, Production Path, Modified Date, Modified Time, and Time Offset Value.  *Id.* at 20-21.  The Court also ordered that e-mails must contain the following additional fields: To, From, CC, BCC, Date Sent, Time Sent, Subject, Date Received, Time Received, and Attachments.  *Id.* at 21-22.  Paper records, according to the Order, must contain the following additional metadata fields: Bates_Begin, Bates_End, Attach_Begin, and Attach_End.  *Id.* at 22-23.

The Court further ordered the Government to produce spreadsheets in native format, with load files if the required metadata was not preserved in the native.  *Id.* at 23.  The Court also gave the Government the option of producing spreadsheets in TIFF format, with load files, if it could demonstrate why native production would reveal exempt information.  *Id.*  While the Court ruled that certain additional metadata fields requested in the protocol—Parent Folder, File Size, File Extension, Record Type, Master_Date, and Author—need not be produced in this case, it adopted all other requirements in the protocol with respect to agency records.  *Id.*[3]  The Court

---

[3]     The protocol, which was attached to the February 7 Order, provides, *inter alia*, that electronic records should be delivered (1) as Group IV TIFF image files and .txt files, with text from redacted pages produced in Optical Character Recognition ("OCR") format, and (2) in a format compatible with the Concordance 8x and Opticon 3x platforms, images must be delivered as Group IV TIFF image files.  Hard copy records must be produced as Group IV TIFF image files, along with OCR text, in a format compatible with Concordance 8x and Opticon 3x, with certain objective coding fields, including source/custodian.  *See* Order, Ex. A.

stated in a footnote that its Order was limited to this case, and that there was no suggestion that the protocol should be used in all cases.  *Id.* at 23 n.44.

On February 14, 2010, the Government wrote to the Court, requesting permission to file declarations with a contemplated motion for reconsideration,[4] and informing the Court of its intent to move for a stay of the Order pending disposition of the motion for reconsideration or consideration of appeal.  Cordaro Decl., Ex. J.  [Docket # 51.]  At a hearing the same day, the Court cautioned the Government that there already had been "a lot of briefing" on the metadata issue, and that new evidence could not be put before the Court.  *See id.*, Ex. K at 7.  The Court also advised the Government that its contemplated motion for a stay would "fall on deaf ears." *See id.*, Ex. K at 6.  The Court declined to allow the Government to present any argument with regard to its request.  *See id.*, Ex. K at 8.

On February 14, 2010, the Court issued the Supplemental Order, clarifying that "Full Text" was a required metadata field that must be produced, even though it was not explicitly mentioned in the Order.  [Docket # 50.]

On February 21, 2011, prior to the filing of the instant stay application, defendants filed a Notice of Appeal of the Court's Order.  *See* Cordaro Decl., Ex. L.

## ARGUMENT

## THE COURT SHOULD GRANT A STAY OF THE ORDER PENDING APPEAL

The Government's application for a stay pending appeal should be granted.  As the Court has acknowledged, whether metadata is encompassed in a FOIA request for "records" is "complicated" and presents an issue of first impression.  In light of the enormous potential

---

[4] Pursuant to the Court's Local Rules, parties may not file declarations in connection with a motion for reconsideration absent leave of the Court.  *See* Local Civ. R. 6.3.

9

implications of the Court's Order for FOIA practice throughout the country, as well as the Government's determination to appeal that Order, a stay should be granted pending appeal.

The Court considers four factors when determining whether to grant a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 129 S. Ct. 1749, 1761 (2009) (citation and internal quotation marks omitted); *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007). These factors are not prerequisites to be met, but rather considerations to be balanced. "[T]he degree to which a factor must be present varies with the strength of the other factors, meaning that more of one [factor] excuses less of the other." *World Trade Ctr.*, 503 F.3d at 170 (alteration in original; citation and internal quotation marks omitted).

"'The necessary "level" or "degree" of possibility of success will vary according to the court's assessment of the other [stay] factors.'" *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) (second alteration in original)). "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[ ] will suffer absent a stay." *Id.* (quoting *Mich. Coal. of Radioactive Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) (alteration in original)). Where the other factors are met, the Government need only demonstrate "a substantial case on the merits," rather than a strong likelihood of success, in order to obtain a stay. *See LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994) ("movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay");

10

*Network Enters., Inc. v. APBA Offshore Prods., Inc.*, No. 01 Civ. 11765 (CSH), 2007 WL 398276, at *1 (S.D.N.Y. Feb. 5, 2007); *Ctr. for Envtl. Law v. Office of U.S. Trade Representative,* 240 F. Supp. 2d 21, 22 (D.D.C. 2003); *see also Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986) (where movant has established substantial irreparable harm and balance of harms weighs heavily in its favor, it need only raise "'serious legal questions going to the merits'" to obtain a stay pending appeal (quoting *Wash. Metro. Area Transit Comm'n*, 559 F.2d at 844)).

**I.      The Government Will Present on Appeal a Substantial Case on the Merits**

This case involves a FOIA request that made no mention of metadata or a particular form or format of production.  Nevertheless, the Court ordered the Government to produce load files containing specified metadata fields with all future productions, along with the format of production specified in a protocol submitted *ten months* after the Request.  This ruling was erroneous for several reasons.  The Government thus has a strong likelihood of success on appeal or, at the very least, will raise on appeal substantial issues regarding the merits of the case.

**A.      Plaintiffs' Belated Request for Metadata Is Unexhausted and Impermissibly Expands the Scope of Their FOIA Request**

The Court erred in ordering the Government to release metadata to plaintiffs because their request for that metadata was unexhausted.  "[E]xhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA."  *Wilbur v. CIA*, 355 F.3d 675, 676 (D.C. Cir. 2004) (per curiam) (citation and internal quotation marks omitted); *see* 5 U.S.C. § 552(a)(6)(A)-(C) (specifying that requester is deemed to have exhausted administrative remedies when agency exceeds 20-day time limit for its initial response to a request, or 20-day limit for adjudicating an administrative appeal of the response to the request, or its 10-day extension, if any, of either time limit); 6 C.F.R. § 5.9(c) ("If you wish to seek review by a court of any adverse determination,

11

you must first appeal it under this section."); 28 C.F.R. § 16.9(c) (same).  Relatedly, courts have

found it "impermissible" for a FOIA requester "to expand a FOIA request after the agency has

responded and litigation has commenced."  *Gillin v. IRS*, 980 F.2d 819, 823 n.3 (1st Cir. 1992);

*see also Thomas v. Office of U.S. Attorney*, 171 F.R.D. 53, 55 (E.D.N.Y. 1997); *Pray v. DOJ*,

902 F. Supp. 1, 2-3 (D.D.C. 1995) (disallowing request made in response to summary judgment

motion), *aff'd in part & remanded in part on other grounds*, No. 95-5383, 1996 WL 734142, at

*1 (D.C. Cir. Nov. 20, 1996).

A FOIA request must "reasonably describe[ ]" the records sought.  5 U.S.C. §

552(a)(3)(A); *Truitt v. Dep't of State*, 897 F.2d 540, 544 (D.C. Cir. 1990). The Court observed

that plaintiffs' protocol, submitted on December 22, 2010, "was the *first time* that Plaintiffs made

a written demand for load files and metadata fields."  Order at 6 (emphasis added).  Plaintiffs

conceded at the hearing on January 12, 2011, that the protocol was "new."  *See* Cordaro Decl.,

Ex. H at 17.  The Court further noted that the *only* prior written specification of form of

production was plaintiffs' July 23 e-mail.  *See* Order at 6.  Plaintiffs did not argue, nor did the

Court find, that the Request itself should have been construed as demanding metadata associated

with responsive records, or a particular form or format of production.  Defendants thus acted

reasonably in interpreting the FOIA Request as embracing neither.  *See Halpern v. FBI*, 181

F.3d 279, 288 (2d Cir. 1999) ("[A] FOIA request binds an agency to disclose information to the

extent that "'the agency is able to determine precisely what records are being requested.'"

(quoting *Kowalczyk v. DOJ*, 73 F.3d 386, 388 (D.C. Cir. 1996)); *Kowalczyk*, 73 F.3d at 389 (the

agency "is not obliged to look beyond the four corners of the request for leads to the location of

responsive documents").  Any "new" demand by plaintiffs for metadata during the litigation does

not transform the FOIA Request into one that "reasonably describe[d]" the metadata or form or

format sought, and thus should have been rejected as an impermissible attempt to expand the

FOIA Request.  *See Thomas*, 171 F.R.D. at 55.

> **B.     The Court Incorrectly Determined That "Certain Metadata"**
> **Is "Readily Reproducible" for FOIA Purposes**

By ruling that certain metadata is "readily reproducible" without receiving briefing and

factual declarations, the Court determined issues in dispute without a proper record.  This ruling

was contrary both to FOIA, which contemplates that agencies will be permitted to submit

declarations on the issue of reproducibility, and that those declarations will be accorded

substantial weight, *see* 5 U.S.C. § 552(a)(4)(B), and to the current version of Rule 56(f) of the

Federal Rules of Civil Procedure, which requires, *inter alia*, notice and an opportunity to respond

when a court intends to grant summary judgment for a non-movant, or on its own.

> **1.     The Court Failed to Develop a Record Concerning Whether the**
> **Metadata Specified in the Order is "Readily Reproducible"**

FOIA provides that "[i]n making any record available to a person under this paragraph,

an agency shall provide the record in any form or format requested by the person if the record is

*readily reproducible* by the agency in that form or format."  5 U.S.C. § 552(a)(3)(B) (emphasis

added).  In a subsequent provision addressing the jurisdiction of the district courts in FOIA

litigation, the statute provides: "In addition to any other matters to which a court accords

substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning

. . . reproducibility under paragraph (3)(B)."  *Id.* § 552(a)(4)(B).  In discussing the principle of

"substantial weight" in the FOIA context, courts repeatedly have stated that when agency

declarations are reasonably specific and are not impugned by contradictory evidence or evidence

of bad faith, "the court is not to conduct a detailed inquiry to decide whether it agrees with the

agency's opinions; to do so would violate the principle of affording *substantial weight* to the

expert opinion of the agency." *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980) (emphasis added); *see, e.g., Edmonds v. DOJ*, 405 F. Supp. 2d 23, 27 (D.D.C. 2005); *Judicial Watch, Inc. v. DOJ*, 306 F. Supp. 2d 58, 64-65 (D.D.C. 2004).

By not ordering full motion practice on the reproducibility issue, even though the Government twice requested it, the Court ruled on the issue without the benefit of the agencies' opinions, let alone the affording of substantial weight to those opinions.  Left unstated in the Order, however, was how defendants, at the administrative stage, were supposed to divine that plaintiffs were requesting metadata or *any* particular form or format of production, and thus make a determination as to reproducibility.  As the declarations submitted in support of the instant motion demonstrate, the format-of-production requirements in the Order, including the majority of plaintiffs' protocol, are *not* "readily reproducible" because defendants lack the technological capacity to fulfill those requirements.  *See* Declaration of Catrina Pavlik-Keenan, dated Feb. 20, 2011 ("Pavlik-Keenan Decl."), ¶ 5; Declaration of Donna A. Lewis, dated Feb. 18, 2011 ("Lewis Decl."), ¶ 5; Declaration of Crystal Rene Souza, dated Feb. 18, 2011 ("Souza Decl."), ¶ 13; Fourth Hardy Decl., ¶ 2.  The following examples are illustrative only, and are not meant to be an exhaustive treatment of the reproducibility issues discussed in the declarations:

*First*, the Court ordered that all future productions, including the February 25, 2011 production, must include load files containing ten metadata fields.  Order at 20-21; Supplemental Order at 1.  Defendants' FOIA offices cannot comply with this order because their FOIA programs do not generate load files, *see* Lewis Decl., ¶ 12; Souza Decl. ¶ 17; Fourth Hardy Decl., ¶ 10, or because the configuring of load files will involve manual redactions of exempt metadata fields, potentially resulting in an additional 500 hours of processing for 500 documents, *see* Pavlik-Keenan Decl., ¶¶ 22, 26.  Load files thus are not "readily reproducible."

*Second,* the Court ordered defendants to produce spreadsheets in native format, with accompanying load files if the required metadata is not preserved in the native format or, in the alternative, as TIFFs with accompanying load files.  Order at 23.  Native formats cannot be redacted either in whole or in part to account for FOIA's statutory exemptions.  *See* The Sedona Principles: Best Practices Recommendations and Principles for Addressing Electronic Document Production (2d ed. 2007) ("Sedona Principles"), Comment 12.b ("[I]nformation produced natively may be difficult or impossible to redact or Bates number"); Fourth Hardy Decl. ¶ 9 ("Thus, release in native format would mean a release of raw, unredacted documents and a waiver of applicable FOIA exemptions.").  As stated *supra*, load files are not readily reproducible by defendants' FOIA offices, making compliance with either prong of this order impossible.

*Third,* sections I.D and II.E of the protocol, entitled "Database Load Files/Cross-Reference Files," incorporated into the Order by reference, require that records be produced "in a format compatible with Concordance 8x and Opticon 3x."  Order, Ex. A at 1, 3.  ICE's, DHS's and EOIR's FOIA Offices, however, do not possess Concordance or Opticon Software, and they further lack the ability to produce files in a format compatible with that software.  *See* Pavlik-Keenan Decl., ¶ 19; Lewis Decl. ¶ 10; Souza Decl., ¶ 17.  FBI, as discussed *supra*, cannot generate load files from its FOIA program.  *See* Fourth Hardy Decl. ¶ 10.

*Fourth,* the Court's order would require the FBI to re-do its *entire* search in order to ensure that all metadata has been captured.  Fourth Hardy Decl. ¶ 12.  This would be unduly burdensome because, *inter alia*, FBI granted expedited processing of plaintiffs' FOIA request, *see* 5 U.S.C. § 552(a)(6)(E), began searching for documents in March 2010, and has been engaged in the processing of over 500,000 pages of documents since May 2010.  *See* First

15

Declaration of David M. Hardy, dated Nov. 12, 2010, ¶¶ 22-25 [Docket # 15]; Second

Declaration of David M. Hardy, dated Jan. 26, 2011, ¶¶ 9-12 [Docket # 29].  Plaintiffs are not

entitled to a "do-over" of the Government's search as a result of their untimely request for

metadata and a particular form or format of production.  *See Kowalczyk*, 73 F.3d at 388 ("A

reasonable effort to satisfy [the FOIA] request does not entail an obligation to search anew based

upon a subsequent clarification.").  Therefore, any metadata or form-or-format request that

would require a new search is not "readily reproducible."

These examples are only illustrative.   But they make clear that the Court erred in holding

that certain metadata is "readily reproducible," even where, as here, the FOIA request is silent on

metadata and form or format of production.  Without knowing the exact scope of its search

*during the administrative phase*, an agency will not know how to conduct its search or process

the responsive records, what technology will be required, or the amount of fees to charge.

Belatedly forcing an agency to produce electronic versions of records will waste agency

resources by forcing individuals to retrace their steps.  Had the Government been given the

opportunity to brief reproducibility in the context of a partial summary judgment motion, as it

requested, defendants would have submitted declarations concerning these issues, which would

have been entitled to substantial weight.  5 U.S.C. § 552(a)(4)(B).  The Court's failure to afford

the Government that opportunity is contrary to the statute, and results in a substantial issue for

appeal.

## 2.    The Court's Order Was Inconsistent with Rule 56(f)

The issuance of the Order, without full summary judgment motions, also is contrary to

the current version of Rule 56(f) of the Federal Rules of Civil Procedure.  Rule 56(f) became

effective December 1, 2010 and is applicable to the Order.  *See* Order Amending Fed. R. Civ. P.

16

(U.S. Apr. 28, 2010) ("[T]he foregoing amendments shall take effect on December 1, 2010, and shall govern in all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending.").  The rule provides that the Court must give the parties "notice and a reasonable time to respond" if it wishes to "grant summary judgment for a nonmovant," Fed. R. Civ. P. 56(f)(1), or "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute," Fed. R. Civ. P. 56(f)(3).

Courts in this district have recognized that "[s]ummary judgment is the preferred procedural vehicle for resolving FOIA disputes." *Bloomberg L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 649 F. Supp. 2d 262, 271 (S.D.N.Y. 2009); *see also Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993) ("Generally, FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified.").  Cases involving form or format of production are no exception because, at bottom, a ruling against the Government on that issue constitutes a dispositive finding that the Government did not adhere to its FOIA obligations.  Significantly, the Court's February 3 opinion cited five cases that addressed whether a requested form or format of production was "readily reproducible" under FOIA.  All of them were litigated on summary judgment motions.  *See Sample v. Bur. of Prisons*, 466 F.3d 1086, 1087 (D.C. Cir. 2006); *TPS, Inc. v. U.S. Dep't of Defense*, 330 F.3d 1191, 1193 (9th Cir. 2003); *Laroche v. SEC*, No. C 05-4760 CW, 2006 WL 2868972, at *1 (N.D. Cal. Oct. 6, 2006); *Carlson v. U.S. Postal Serv.*, No. C-02-05471 RMW, 2005 WL 756573, at *1 (N.D. Cal. Mar. 31, 2005); *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 61 (D.D.C. 2003).   A sixth, *Jordan v. DOJ*, No. 07-cv-02303-REB-KLM, 2009 WL 2913223 (D. Colo. Sept. 8, 2009), also was adjudicated on a motion for summary judgment.  *See id.* at *1, *3.

Here, there was no summary judgment motion.  The parties merely submitted three-page letters to the Court and presented their viewpoints during a "pre-motion hearing."  *See* Cordaro Decl., Exs. E-I.  Nevertheless, the Court issued an injunctive order that effectively granted partial summary judgment, and directed the release of metadata and certain formats of production, on the basis that "certain metadata" is "readily reproducible" under FOIA.  Order at 17-18.  But the Court issued the Order without (i) affording the Government notice and an opportunity to respond with full briefing, including submission of a full factual record, Fed. R. Civ. P. 56(f)(1), (3), even though FOIA itself provides the agencies an opportunity to submit declarations on reproducibility that would be entitled to substantial weight, 5 U.S.C. § 552(a)(4)(B), or (ii) identifying for the parties the "material facts that may not be genuinely in dispute," Fed. R. Civ. P. 56(f)(3).  This is yet another substantial issue for appeal that warrants the grant of a stay.

### C.    The Federal Discovery Rules Are Inapplicable to FOIA Requests

Rule 34 of the Federal Rules of Civil Procedure does not save plaintiffs' belated metadata and format demands.  Rule 34 is a civil discovery rule that governs responses to document requests during litigation; it does not govern *pre-litigation* FOIA administrative proceedings, either directly or by analogy.  *Cf. Mohammed v. Mukasey*, 280 F. App'x 58, 60 (2d Cir. 2008) (summary order) (noting, in deportation context, that Federal Rules of Civil Procedure have no application to administrative proceedings); *McClelland v. Andrus*, 606 F.2d 1278, 1285 (D.C. Cir. 1979) ("The extent of discovery that a party engaged in an administrative hearing is entitled to is primarily determined by the particular agency: both the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure are inapplicable . . . .").  An obvious example of the difference between FOIA and civil litigation is the absence of protective orders or clawback provisions in the FOIA context.  *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157,

18

174 (2004) ("There is no mechanism under FOIA for a protective order . . . ."). That is because release of records under FOIA, unlike in the civil litigation context, constitutes a release to the public. *See id.* ("[O]nce there is disclosure, the information belongs in the general public."). Moreover, nothing in Rule 34 allows plaintiffs to expand the scope of their FOIA request by making what amounts to a discovery demand for information not specified in the Request. *See Jones v. FBI*, 41 F.3d 238, 250 (6th Cir. 1994) (explaining that "a plaintiff's right to discovery" in civil litigation does not "entitle a FOIA plaintiff to circumvent the rules limiting release of documents under FOIA"). Fundamentally, the Government's production obligations under FOIA are governed by the statute, not the Federal Rules. The Court's reference to what is expected of litigators "when making a document production in the twenty-first century," Order at 16, has little bearing when applied to the obligations of FOIA administrators.

Even if Rule 34 applied to the FOIA Request, which it does not, there is ample case law in the civil e-discovery context that makes clear that metadata must be requested as soon as possible, and a party that delays in requesting it will be deemed to have waived the request. As Magistrate Judge Maas instructed in *Aguilar v. Immigration & Customs Enforcement*, 255 F.R.D. 350 (S.D.N.Y. 2008), cited in the Order: "[I]f a party wants metadata, it should 'Ask for it. Up front. Otherwise, if [the party] ask[s] too late or ha[s] already received the document in another form, [it] may be out of luck.'" *Id.* at 357 (citation omitted). The Government made *six* productions of over two thousand pages before plaintiffs submitted the protocol. The demands therein would have been untimely in the civil discovery context, let alone in the FOIA context. *See Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 426 (D.N.J. 2009) (unduly burdensome for party to re-produce documents based on belated metadata request); *Aguilar*, 255 F.R.D. at 359 (denying majority of motion to compel belatedly requested metadata); *Autotech*

*Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 248 F.R.D. 556, 559 (N.D. Ill. 2008) ("It seems a little late to ask for metadata after documents responsive to a request have been produced in both paper and electronic format.  Ordinarily, courts will not compel the production of metadata when a party did not make that a part of its request." (citing cases)).

### D. A Substantial Issue Exists as to Whether Metadata Is a "Record" or an "Integral or Intrinsic Part" of a Record for FOIA Purposes

Finally, the Government will be able to raise a substantial challenge to the Court's holding that "metadata *maintained* by the agency *as part of an electronic record* is *presumptively* producible under FOIA, unless the agency demonstrates that such metadata is not 'readily reproducible.'"  Order at 18 (emphasis in original).  As shown below, there are substantial questions concerning this holding that the Government can raise on appeal.

Metadata is "information describing the history, tracking, or management of an electronic document."  *Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 646 (D. Kan. 2005) (quoting Proposed Advisory Committee Note to Fed. R. Civ. P. 26(f)).  "In most cases, . . . the metadata will have no material evidentiary value. . . ."  Sedona Principles, Intro., § 2.D.  Moreover, "[r]outine migration [of electronic information] will likely result in the loss or alteration of some elements of metadata associated with the native application, and the addition of new elements."  *Id.* § 4(A)(vi); *see* Order at 18.  Metadata also may be inaccurate.  For example, "the computer on which [a] document is saved may automatically assign the document an author based on the information available on that computer.  That document may be used as a template by other persons, but the author information is never changed."  Sedona Principles, Comment 12.a.

FOIA applies solely to "records."  *See* 5 U.S.C. § 552(a)(3)(A) (providing, with exemptions not relevant here, that federal agencies "shall make . . . *records* promptly available to any person" upon "any request for *records*" that "reasonably describes such *records*" and

complies with agency procedures for FOIA requests." (emphasis added)).  Since the enactment

of the Electronic Freedom of Information Act Amendments of 1996 ("E-FOIA Amendments"),

Pub. L. No. 104-231, FOIA has specified that the term "record" includes "any information that

would be an agency record subject to the requirements of [FOIA] when maintained in any

format, including an electronic format."  5 U.S.C. § 552(f)(2).  The E-FOIA Amendments also

provide that "any agency shall provide the record in any form or format requested by the person

if the record is readily reproducible by the agency in that form or format."  *Id.* § 552(a)(3)(B).

Even though an electronic "form" or "format" that holds a "record" may also contain

additional information, including metadata, that fact does not mean that the additional

information is swept up by a FOIA request for "all records" pertaining to a particular subject.  A

contrary result would mean that an agency responding to an "all records" request would be

required to search for, and process, all electronic iterations of a responsive record because the

associated metadata could vary with each migration of the record.  Such administrative chaos

cannot be what Congress intended by the 1996 definition of "record," particularly given that

courts routinely reject FOIA requests that result in unduly burdensome searches.  *See AFGE v.*

*U.S. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990) ("[I]t is clear that these requests are

so broad as to impose an unreasonable burden upon the agency," because agency would have "to

locate, review, redact, and arrange for [the] inspection [of] a vast quantity of material.").

The legislative history of the E-FOIA Amendments supports this view.  At a House

subcommittee hearing, Senator Leahy testified that "access [to records] should be *the same*

whether they are on a piece of paper or a computer hard drive."  H.R. Rep. No. 104-795, at 16

(1996) (emphasis added).  The House Report further notes that the E-FOIA Amendments

imposed a definition of "record" to "clarif[y] existing practices," *id.* at 18, and that "[e]lectronic

searches should not result in *any greater expenditure of agency resources* than would have occurred with a conventional paper-based search for documents," *id.* at 22 (emphasis added). The Court's Order, by contrast, would render electronic searches far more burdensome than traditional searches.  Nor does metadata, which often has "no material evidentiary value" and may be inaccurate, *see supra* at 20, further the purpose of FOIA, which is "to ensure that the Government's activities be opened to the sharp eye of public scrutiny."  *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 774 (1989).[5]

For the foregoing reasons, the Government clearly has demonstrated that it will raise on appeal a "substantial case on the merits."  Nothing more is required to satisfy the first prong of the stay analysis.  *See LaRouche*, 20 F.3d at 72-73.  As discussed below, the other three factors of the analysis also tip heavily in favor of granting a stay pending appeal of the Order.

## II.     The Government Will Be Irreparably Injured Absent a Stay

There can be no question that compliance with the Order will irreparably harm the Government.  The Court has ordered the release, by February 25, 2011, of metadata associated with all records that otherwise must be disclosed on that date.  To the extent that defendants have no other basis for withholding those records, other than the arguments rejected by the Court, *see* Pavlik-Keenan Decl. ¶ 21 ("At least some of the documents that must be produced by February 25, 2011 contain at least one metadata field that both (a) is required to be produced on the court's order and (b) contains no exempt information"), the Government will suffer an identifiable,

---

[5]     To the extent the Order should be construed as holding that the specified metadata is not a "record" for FOIA purposes, but solely a "form or format" of production, *see* 5 U.S.C. § 552(a)(3)(B), the facts of this case do not support the Court's ruling.  No reasonable agency could have interpreted the FOIA Request as specifying the form or format of production specified in the protocol, let alone load files containing discrete fields of metadata.  That plaintiffs attempted to correct this defect during litigation is of no moment because, as stated above, a requester cannot expand a FOIA request during litigation. *See supra* at 12.

concrete, and irreparable harm as a result of the Court's order, because the release of the documents will disrupt the status quo and effectively destroy defendants' right of appellate review with respect to those records.  Under these circumstances, the irreparable injury standard for obtaining a stay is satisfied.  *See, e.g., Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979) (where "the denial of a stay will utterly destroy the status quo, irreparably harming appellants, but the granting of a stay will cause relatively slight harm to appellee, appellants need not show an absolute probability of success in order to be entitled to a stay"); *People for Am. Way Found. v. Dep't of Educ.*, 518 F. Supp. 2d 174, 177, 179 (D.D.C. 2007) (issuing stay where parties agreed that disclosure of document would moot any appeal and noting that "[p]articularly in the FOIA context, courts have routinely issued stays where the release of documents would moot a defendant's right to appeal"); *Ctr. for Nat'l Sec. Studies v. DOJ*, 217 F. Supp. 2d 58, 58 (D.D.C. 2002) (granting stay of order requiring release of information under FOIA); *see also HHS v. Alley*, 129 S. Ct. 1667 (2009) (staying district court's order which directed agency to disclose records, pending final disposition of appeal by court of appeals); *Nat'l Council of La Raza v. DOJ*, 411 F.3d 350, 355 n.3 (2d Cir. 2005) (noting that Second Circuit had granted stay of district court's order directing Government to disclose portions of OLC memorandum); *Ferguson v. FBI*, 957 F.2d 1059, 1060 (2d Cir. 1992) (noting that Second Circuit had granted motion for stay pending appeal of district court's order directing government to disclose information under FOIA).

Furthermore, the Court misperceived the harm imposed by its Order on the Government. *See* Order at 20.  As discussed *supra*, the FBI would be required to redo its entire search for records—a search that already has generated approximately 500,000 pages of potentially responsive documents.  In addition, because of the time constraints associated with the "opt-out"

production, ICE obtained permission to use an e-discovery program called Clearwell[6] for FOIA purposes, at a cost of over $270,000 in upgrades, and the acquisition of a $32,000 server.  *See* Pavlik-Keenan Decl., ¶¶ 7-8, 11.  Continued use of the software will require an additional expenditure of funds in an unknown amount, perhaps in the hundreds of thousands, if not millions, of dollars.  *See id.* ¶ 13.  In addition, ICE was required to suspend many of the agency's security protocols in order to allow Clearwell to run properly.  *See id.* ¶ 11.  This is further evidence of irreparable harm that entitles the Government to a stay of the Order pending appeal.

## III.    Issuance of a Stay Will Not Substantially Injure Plaintiffs

Any harm to plaintiffs as a result of a stay pending appeal would be minimal, and would not outweigh the need for a stay, particularly because plaintiffs waited ten months to request the metadata that the Court has ordered disclosed.  Plaintiffs had ample opportunity to request metadata in their original FOIA request, submit a new FOIA request to defendants outside of the litigation, or bring this issue to the Court's attention.  Instead, they waited over ten months, until the eve of a 13,000-page production by defendants, to make their metadata request, and five months to make a request for Excel spreadsheets in native format.  Plaintiffs' own delay thus demonstrates that they will not be harmed by a stay of the Order.  In addition, the Government is not seeking a stay of its FOIA disclosure obligations in this case; it only seeks a stay of the metadata and form-and-format directives in the Order.

## IV.    The Public Interest Would Be Well-Served by a Stay

It is plainly in the public's interest to resolve this critical FOIA issue at the appellate level before the Government is required to release the very records that would be at issue in the

---

[6]    The FBI would be able to process 79 responsive spreadsheets for the February 25, 2011 production, consistent with the Order, by using Clearwell, which is utilized by FBI's Financial Crimes Section.  *See* Fourth Hardy Decl. ¶ 8.  Clearwell will be unavailable for future productions because it has reached maximum capacity due to ongoing investigations.  *See id.*

appeal.  As this Court correctly noted in the Opinion, "this is an issue of first impression."  Order at 16.  The Court also noted at the January 12, 2011 conference: "This is kind of complicated.  This is not going to be easy. . . . You are asking me to figure out what is required of FOIA requests."  Jan. 12, 2011 Hrg. Tr. at 13.  Thus, providing defendants the opportunity to seek further review of the important issues at hand—*i.e.,* what is required of FOIA requests with respect to metadata, the intersection *vel non* of the Federal Rules of Civil Procedure and the processing of FOIA requests, whether the metadata identified by the Court is presumptively producible, and the broader question of whether metadata even is an agency record subject to FOIA—would serve the public interest.  That salutary purpose is even more compelling where, as here, the Court issued a decision with potentially sweeping consequences for FOIA practice throughout the country on what is essentially an empty factual record.  The public interest thus would be served by a stay pending appeal.

## CONCLUSION

For the foregoing reasons, the Court should grant defendants' motion for a Stay of the Court's Order pending appeal.  In light of the upcoming production deadline of February 25, 2011, defendants respectfully request expedited consideration of this motion or, in the alternative, an interim stay of the Order pending the Court's determination of this motion.  If the Court were inclined to deny defendants' motion for a stay pending appeal, defendants respectfully request an interim stay of the Order pending disposition of the Government's motion for a stay in the United States Court of Appeals for the Second Circuit.

Dated:   New York, New York
          February 21, 2011

                                     Respectfully submitted,

                                     PREET BHARARA
                                     United States Attorney for the
                                     Southern District of New York
                                     *Attorney for Defendants*

By:     s/ Joseph N. Cordaro       
           CHRISTOPHER CONNOLLY
           JOSEPH N. CORDARO
           CHRISTOPHER B. HARWOOD
           Assistant United States Attorneys
           86 Chambers Street, 3rd Floor
           New York, New York 10007
           Telephone: (212) 637-2761 / 2745 / 2728
           Facsimile:  (212) 637-2786 / 2686
           E-mail:  christopher.connolly@usdoj.gov
                          joseph.cordaro@usdoj.gov
                          christopher.harwood@usdoj.gov