**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- x
                        :

NATIONAL DAY LABORER ORGANIZING     :
   NETWORK, et al.,                       :     Civil Action No. 10-CV-3488

              Plaintiffs,        :     (SAS)
                        :

    -v -                        :     **DECLARATION**
                        :     **OF RYAN LAW**
UNITED STATES IMMIGRATION AND CUSTOMS :
ENFORCEMENT, et al.,              :
                        :

              Defendants.     :
-------------------------------------------------------------------- x

Ryan Law, pursuant to 28 U.S.C. § 1746, declares as follows:

1.     I am the Deputy Director of the Freedom of Information Act ("FOIA") Office at U.S.

Immigration and Customs Enforcement ("ICE") within the Department of Homeland Security

("DHS").  I have held this position since May 9, 2010.  The FOIA office is located at 800 North

Capitol Street, N.W., Suite 585, Washington DC 20536-5009.

2.     My official duties and responsibilities include the general management, oversight, and

supervision of the ICE FOIA Office.  The ICE FOIA Office is responsible for the receipt of,

processing of, and response to all Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and

Privacy Act, 5 U.S.C. § 552a, requests received at ICE.  In connection with my official duties, I am

familiar with ICE's procedures for responding to requests for information pursuant to provisions of

FOIA and the Privacy Act.

3.     I am familiar with ICE's processing of the FOIA request that plaintiffs in the above-

captioned action—the National Day Laborer Organizing Network, Center for Constitutional Rights,

and Immigration Justice Clinic of the Benjamin N. Cardozo School of Law—submitted on or about

February 3, 2010. The ICE FOIA Office assigned FOIA case number 2010FOIA2674 to this request.

4.     I make this declaration in support of ICE's motion for a stay pending appeal of the February 7, 2011 and February 14, 2011 Orders requiring the production of certain fields of metadata.  This declaration will describe ICE's standard operating procedures for FOIA requests and ICE's technical capabilities. The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

<u>**Description of the Existing FOIA Process**</u>

5.     ICE's processing of a FOIA request begins when a FOIA request is received in the ICE FOIA Office.  A FOIA intake specialist logs the request into the FOIA Request Tracking System, creates an acknowledgement letter, and reads the request.  The FOIA intake specialist then determines where within the agency responsive records would likely be located.  For example, if the request seeks a copy of an individual's personnel file, responsive records would likely be located within the ICE Office of Human Capital, the ICE program office where the Official Personnel File is maintained.

6.     The FOIA intake specialist e-mails the FOIA request to the ICE program offices that are deemed likely to have responsive records.  The e-mail instructs the program offices to conduct a search for all records potentially responsive to the FOIA request and to provide all such records to the ICE FOIA Office either electronically via e-mail, on CD/DVD, or in paper form via inter-office mail.

7.     The ICE program offices then conduct a search for potentially responsive records, document that search, and provide the potentially responsive records and search documentation to the ICE FOIA Office.

8.      Potentially responsive records routinely are received in the ICE FOIA Office in a variety of formats.  ICE program offices may provide records in paper form.  Paper documents may have originated from agency paper files, or may be printed copies of documents that exist in electronic form.  ICE program offices may also provide records in native electronic format (for example, *.doc, *.msg, etc.), or as Portable Document Format (PDF) images of these native-format documents.  PDF images of the documents are created by either printing the native-format document and then physically scanning the document into PDF format, or electronically converting the native-format document into a PDF image via Adobe Acrobat Professional 9.0.

9.      When potentially responsive records are received in the ICE FOIA Office that are not already in PDF format, those records must be converted into a PDF image format so that they can be processed using the ICE FOIA Office redaction software.  Records are converted into PDF image format via one of two methods:  (1) printing the document and physically scanning the document into a PDF image format, or (2) electronically converting the documents into a PDF image format via Adobe Acrobat Professional 9.0.

10.     The process of converting documents into PDF image format eliminates the metadata associated with the original document.  As explained below, using its standard FOIA processes, ICE has no capability to take redactions on documents unless the documents are in PDF format.  Consequently, using its standard process, ICE has no capability to process records under FOIA and, at the same time, maintain the records' underlying metadata.  This has never been an issue of concern for ICE before as ICE has never encountered a request for metadata in the FOIA process prior to the instant request.

11.     To review and redact records, the ICE FOIA Office utilizes Adobe Acrobat Professional 9.0 in combination with the Adobe-Plug-In REDAX version 4.6.1 (hereafter

"REDAX").  REDAX is a redaction tool developed by Appligent.  In order for documents to be compatible with the Adobe and REDAX software, the documents must be converted to PDF form. In other words, before records may be processed using ICE's standard FOIA software, they must be converted to a "flat" format in which all pre-existing metadata has been eliminated.

12.     A FOIA paralegal specialist reviews each and every single word contained within each and every single potentially responsive document in Adobe and uses REDAX to bracket information within the document that is exempt pursuant to one or more of the FOIA Exemptions. The result of this review is a "highlighted version" of the document; information deemed exempt appears as bracketed text and/or images within the document.

13.     Upon completion of the review and approval of the redactions, the FOIA paralegal specialist uses REDAX to "burn" the redactions into the document.  REDAX redacts the document by removing all bracketed text or images and replacing that information with opaque black boxes. The FOIA exemption(s) applied to justify the withholding appear in each black box.  REDAX physically and technically removes the redacted information from the document.  The documents are then produced either in paper form or as "flat" PDF images with no underlying metadata.

**ICE's Capability to Process Metadata**

15.     To date, the ICE FOIA Office has never received a FOIA request for "metadata".

16.     As explained above, the ICE FOIA Office's current processes — which require the conversion of documents into PDF format — do not support the review, processing, and disclosure of metadata.  The possibility of extracting and processing metadata was not contemplated during the development of the ICE FOIA Office's current processes.

17.     In order to review, process, and disclose metadata in response to a FOIA request, the ICE FOIA Office would be required to obtain a yet-undetermined hardware or software that would

allow metadata to be extracted from records and to be exported into an electronic format. The exported metadata would then need to be reviewed to determine whether it contains information that is exempt from disclosure under FOIA. See paragraphs 40 and 41 below for examples of information that may be exempt.

18.     In order to review and redact the metadata under ICE's current processes, the metadata would have to be printed and manually scanned into a PDF image format or electronically converted into a PDF image format using Adobe Acrobat Professional. The PDF images containing the metadata would then be reviewed and processed under the FOIA using REDAX. Ultimately, the metadata would be produced as a "flat" PDF document with appropriate redactions. See paragraphs 42 and 43 below for a discussion of how metadata could be reviewed, redacted and produced using the Clearwell software application.

## Description of Events that Led to the Use of Clearwell

19.     Upon receipt of Plaintiffs' request, and during the instant litigation, ICE processed and disclosed records using the ICE FOIA Office's standard processes as described in paragraphs 9-13. Records disclosed to Plaintiffs on July 30, 2010, September 10, 2010, October 21, 2010 and December 6, 2010 were processed using Adobe/REDAX and were disclosed to the Plaintiffs in a PDF image format.

20.     Upon receipt of the Court's December 9, 2010 order requiring that ICE process and disclose all documents relating to the ability of states or localities to decline or limit participation in Secure Communities (the "opt-out" issue) by January 17, 2011, I determined that existing FOIA Office processes would not allow the Agency to process the anticipated volume of records in time to meet the deadline.

21.     Accordingly, I consulted with other program offices within ICE and determined that using the e-discovery platform "Clearwell", which is owned by the ICE Office of the Principal Legal Advisor ("OPLA"), would offer the best chance for the Agency to meet its court-ordered disclosure requirement.

22.     Beginning December 20, 2010, ICE FOIA began utilizing Clearwell to support the review and processing of documents requested by Plaintiffs.

23.     Unlike existing ICE FOIA practices, Clearwell allows the concurrent processing of documents by many users.  In addition, unlike existing ICE FOIA practices, Clearwell allows documents to be processed in multiple formats and does not require the documents to first be converted into PDF image format before they are processed.

24.     A license to use Clearwell for a specified volume of electronic storage was obtained by ICE OPLA to support Agency civil litigation e-discovery requirements.  Clearwell was not obtained by ICE for FOIA applications.  During the three-year application procurement and development process, OPLA did not take FOIA needs into consideration in determining the relevant capabilities the application would require.  Further, in determining the amount of storage that would be purchased from the application vendor, OPLA considered only the volume of current civil litigation and estimates of future civil litigation.  FOIA litigation and FOIA requests were not considered in this process.

25.     The Clearwell e-discovery platform and REDAX were and are the only document processing platforms available to ICE for use in this litigation.  ICE does not have any other e-discovery platforms dedicated to FOIA or for any other agency purpose.

26.     At the time of the Court's December 9, 2010 order, the Clearwell application was untested and was not yet approved for use.  At that time, OPLA was in the beginning stages of

establishing protocols for the use of the software and had originally anticipated a pilot phase of testing to begin in February or March 2011.

27.    In consultation with the ICE Office of the Chief Information Officer, ICE OPLA was able to deploy Clearwell on December 20, 2011 for use by the FOIA Office on a provisional basis specifically to meet the January 17, 2011 deadline imposed for the production of records responsive to the Plaintiff's request for "opt-out" records.

28.    OPLA's Clearwell license establishes a limited amount of electronic storage space – ICE cannot exceed this limit without incurring additional costs.  Using Clearwell to process the opt-out records used up about two to three percent of OPLA's current license.  However, using Clearwell to process the rest of Plaintiffs' FOIA request could itself use up the rest of the current license (given the estimate that there are over 1 million potentially responsive records) and require the purchase of additional storage.  Moreover, in using the Clearwell application to process the opt-out records, ICE encountered a number of technical difficulties and was forced to suspend many of the agency's IT security protocols.  The agency is currently evaluating whether it is appropriate for any component to use the Clearwell software in the future.

<u>**Description of the Clearwell Process**</u>

29.    Potentially responsive documents are uploaded into Clearwell in native format.  Once uploaded, documents are assigned to users within the Clearwell application to be reviewed and processed.

30.    Users log into Clearwell to review and process documents.  Users employ the Clearwell application to bracket exempt information and "tag" the redaction with the specific FOIA Exemptions that apply.

31.     Upon completion of the initial review, documents are assigned to a second user, who conducts a second review.  Upon completion of the review of the documents, the files are moved into a "production folder"

32.     Once the documents have been moved to the production folder, the user may produce the documents in redacted form.  Each native document can be produced in PDF image or Tagged Image File Format (TIFF).  TIFF, like PDF, is a flat image that does not preserve the metadata from the native document.

### Comparison of the Capabilities of Clearwell and REDAX

33.     The Clearwell application has limitations that make it unsuitable for use in FOIA applications.

34.     Unlike existing ICE FOIA processes, Clearwell does not produce a "highlighted" version of the documents.  Absent this "highlighted" version, ICE is unable to easily produce a highlighted version of the documents to the Court in the case of an in-camera review.

35.     Unlike existing FOIA processes, Clearwell has high operation and maintenance costs. To support existing FOIA processes, ICE purchased REDAX licenses in 2008 for a one-time cost of $3,871.52.  Between December 20, 2010 and January 17, 2011, ICE OPLA estimates that the operational and maintenance costs of the Clearwell application exceeded $270,000.00.

36.     There are further practical limitations that make the Clearwell application unsuitable for FOIA use.

37.     Unlike existing FOIA processes, Clearwell can export document metadata.  In other words, it allows for the creation of separate "load files" containing the metadata for each document. But Clearwell does not directly support the review, processing, and redaction of metadata.  In order to accomplish this, ICE would be required to either (1) convert exported metadata into PDF image

files, process those files using REDAX, and produce those files in PDF format, (2) import exported

metadata files into Clearwell, process those files using the Clearwell application, and produce those

files in PDF format, or (3) conduct a document-by-document review of metadata, identify the

exempt metadata fields for each individual document, and export the non-exempt fields of metadata

for each and every single document.  See, paragraphs 42 and 43.

### Description of the Reasons Why ICE Is Unable to Produce the Full Twenty Field Load File Required by the Court

38.     Many of the requested metadata fields contain or may contain FOIA exempt material.

ICE would be required to review each and every field for each and every single document produced

in this case to determine if the metadata is exempt from mandatory disclosure under the FOIA.

39.     For example, Plaintiffs seek the metadata fields "From", "To", "CC", and "BCC" for

all e-mail messages.  These metadata fields may contain the names of individuals or the e-mail

addresses of individuals that would otherwise be exempt from mandatory disclosure under FOIA

Exemptions 6 and 7(C).  Although ICE redacted this information from the document produced in

this case, the metadata would reveal the information that was withheld.

40.     Another example of potentially exempt material is the full text field.  According to

the Court's February 14, 2011 clarification, the full text field would be a mandatory part of the load

file.  Reproduction of the full text as a metadata field in the load file has the potential of revealing

information that may have been redacted in the parent document.

41.     In order to produce the requested metadata fields, ICE would be required to (1) export

the metadata for each responsive document into metadata files, (2) convert the native metadata files

into PDF image files or import those native files into the Clearwell system, (3) conduct a line-by-line

review of each metadata file, (4) redact information contained within those files that is otherwise

exempt from mandatory disclosure under the FOIA, and (5) produce several thousand pages of records containing the non-exempt metadata in PDF image format.  This option — which would produce "flat" PDFs — would not allow Plaintiffs to use the metadata in connection with a review application such as Concordance.

42.    Alternatively, ICE would be required to use Clearwell to run hundreds of thousands of metadata queries to produce non-exempt metadata in native format.  ICE would (1) first be required to export all requested metadata for one single document, (2) review the metadata for that single document and determine what metadata fields are exempt, (3) re-export only the non-exempt metadata fields from the single document (exempt fields would thus be removed).  This process would need to be completed for each and every single document.  Finally, ICE would be required to re-organize each of the document productions in such a way that would allow Plaintiffs to associate the metadata with the parent document.

43.    Neither the manual redaction of the metadata fields as described in paragraph 42 nor the process described in paragraph 43 would result in the production of a load file that contains all 20 of the fields specified by the Court's order.

## V.   JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.  Signed this 23rd day of March, 2011

Ryan A. Law
FOIA Deputy Director
Freedom of Information Act Office
U.S. Immigration and Customs Enforcement
U.S.  Department of Homeland Security