BENJAMIN N. CARDOZO SCHOOL OF LAW • YESHIVA UNIVERSITY

**IMMIGRATION JUSTICE CLINIC**

Peter L. Markowitz
*Assistant Clinical Professor of Law*
*Director, Immigration Justice Clinic*

Bridget Kessler
*Clinical Teaching Fellow*

(212) 790-0895
FAX (212) 790-0256

June 2, 2011

**VIA HAND DELIVERY**

The Honorable Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007

Re:   *NDLON v. ICE, et al.* 10 Civ. 3488 (SAS)

6/3/11

> Defendants are hereby ordered to make any re-designations and production of documents improperly withheld in view of *Milner v. Dep't of the Navy* by June 17, 2011.
> SO ORDERED.
> Shira A. Scheindlin
> U.S.D.J.

Dear Judge Scheindlin:

We write to respond to the Defendants' May 27th letter regarding the material withheld under the Freedom of Information Act ("FOIA") High 2 exemption. In addition, we write to update the Court of relevant developments since the parties briefed our respective cross-motions for summary judgment on the application of FOIA exemptions to the "Opt-Out Production."

*First*, recent Supreme Court decisions affirm FOIA's strong presumption in favor of disclosure. *See* Pls.' Exemptions Mem. of Law, 8 (No. 49). In *Milner v. Dep't of the Navy*, the Court reaffirmed prior holdings that FOIA's aim of broad disclosure requires that "exemptions be given a narrow compass." 131 S. Ct. 1259, 1265 (2011). The Supreme Court applied a similar reasoning in *FCC v. AT&T*, 131 S. Ct. 1177, 1185 (2011), finding that Exemption 7(C)'s phrase "personal privacy" does not apply to corporations and therefore does not protect the internal investigation records of a corporate entity gathered during a government investigation. *See* 5 U.S.C § 552(b)(7)(C).

*Second*, in their May 27th letter to the Court, Defendants note that the agencies are reviewing and reprocessing the documents for which Exemption 2 was claimed.[1] Defendants

---

[1] In their letter, Defendants note that Plaintiffs did not challenge the application of High 2 in the Opt-Out Production. *See* Letter from C. Connolly, to Court, May 27, 2011. Plaintiffs did not, however, concede that Defendants met their burden of justifying the application of Exemptions 2 and 7(e). *See* Pls.' Mem. of Law in Supp. of Summ. J. on Exemptions Applied to Opt-Out

imply that they may assert new, previously unclaimed exemptions over the material withheld under Exemption 2. To the extent Defendants do elect to assert new, previously unclaimed exemptions over material withheld under Exemption 2, Plaintiffs request *Vaughn* indices in order to scrutinize and challenge the appropriateness of such re-designations. Further, Plaintiffs respectfully request that the Court order the Defendants to re-process and produce any improperly withheld documents no later than June 10th. [2]

*Third*, new information and developments related to the agencies' opt-opt policy further supports disclosure of documents or portions of documents withheld pursuant to FOIA Exemptions 5 and 6, as argued in Plaintiffs' Opposition to Defendants' Motion for Summary Judgment. *See* Pls.' Exemptions Mem., 12-24 (No. 49). This new information emphasizes the urgent need for disclosure of the legal basis for the federal government's opt-out policy, and raises serious questions about possible misrepresentations made by ICE to state, local and government officials about the opt-out policy:

- In response to decisions by the Governors of Illinois and New York to suspend Secure Communities agreements with ICE based on concerns about the program, DHS has stated it will continue to operate the program by receiving fingerprints from the FBI.[3]

- DHS has not publically disclosed the legal basis for the policy that Secure Communities is mandatory. Pls.' Exemptions Mem., 13-16 (No. 49).

- The Government has, however, informed Plaintiffs that there is no final version of the memorandum the Court will review *in camera* titled "Secure Communities – Mandatory in 2013."[4] Lack of a final version bolsters Plaintiffs' argument that the October 2, 2011 memorandum,[5] or portions of it, served as the basis for Secretary Janet Napolitano's announcement on October 6, 2010 that Secure Communities would be mandatory, and

---

Production ("Pls.' Exemptions Mem."), n.3 (No. 49). Plaintiffs reserved the right to challenge the application of Exemptions 2 and 7(e) with respect to the Opt-Out Production or any other production in the instant case. *See id.*

[2] We note that while the cross-motions for summary judgment on FOIA exemptions pertain solely to the Opt Out Production, the Court's ruling will nonetheless provide guidance for the Defendants' re-processing of exemptions asserted in the Rapid Production List production and the upcoming productions of documents pursuant to the Final Production List. The parties continue to negotiate the scope and timing of the Final Production List. Plaintiffs expect to receive the first production soon.

[3] *See* Ex. A, Kirk Semple, *Cuomo Ends State's Role in Checking Immigrants*, N.Y. TIMES, June 2, 2011. Other states and localities also continue to question Secure Communities. *See* Ex. B, Julia Preston, *States Resisting Program Central to Obama's Immigration Strategy*, N.Y. TIMES, May 5, 2011; May 14, 2011; Ex. C, Lee Romney, *Noncriminals Swept Up In Federal Deportation Program*, L.A. TIMES, Apr. 25, 2011.

[4] *See* Ex. D, Email from C. Connolly to S. Patel, Apr. 20, 2011; Exemptions Order (No. 92).

[5] Several versions of this memorandum are included in the category "Priority Legal Documents" that the Court will be receiving today.

2

the agencies' public stance since that point.[6] Therefore, the memorandum should be disclosed as the basis for final agency policy. Pls.' Exemptions Mem., 13 (No. 49).

- Based in large part on a review of internal emails disclosed in the January 17, 2010, Opt-Out Production, Representative Zoe Lofgren has called for an investigation into the Department of Homeland Security ("DHS") Immigration and Customs Enforcement ("ICE") Secure Communities program. The purpose of the investigation is to seek information about ICE's misconduct, including "possible violations of criminal law" stemming from misrepresentations ICE made to state, local and federal government officials about the agencies' opt-out policy.[7]

- In response to Representative Lofgren's inquiries, ICE acknowledged that it made inconsistent statements about the opt-out policy.[8] ICE attributed the inconsistent and confusing statements to an ICE contractor, who was terminated after his communication was leaked to the New York Times. However the contractor himself claims that his superiors at ICE were responsible for the deceptions and that ICE has made him a scapegoat to deflect attention from the controversy.[9]

The communications the Court will review from the Opt-Out Production are crucial to the public's ability to assess (1) whether elected officials at ICE and DHS intentionally or knowingly misled the public or elected officials about the opt-out policy,[10] (2) the agencies' purported legal basis for the position that Secure Communities is mandatory. Accordingly, we

---

[6] *See* Pls.' Exemptions Memo, 15 (No. 49)

[7] Ex. E, Letter from Rep. Z. Lofgren, to C. Edwards, DHS, Office of the Inspector General, April 28, 2011; Ex. E, Letter from C. Edwards, DHS Office of the Inspector General, to Rep. Z. Lofgren, May 10, 2011.

[8] Ex. E, Letter from J. Morton, Director, ICE, to Rep. Lofgren, Apr. 28, 2011.

[9] *See* Ex. E, Letter from D. Cadman, former ICE contractor, to Rep. Zoe Lofgren, May 9, 2011; Ex. E, Letter from D Cadman, to Marc Rapp, Assistant Director, Secure Communities, Immigration and Customs Enforcement, Apr. 12, 2011. The public interest in knowing which agency employees have been responsible for the misrepresentations far outweighs any supposed privacy interest in the names of federal government employees. *See* Pls.' Exemptions Mem. 22 (No. 49). In fact, a simple Google search of the title reveals the names of many of the employees or contractors whose titles are included, but names are redacted.

[10] If ICE's attorneys knew that public statements or testimony to Congress was misleading and took actions to cover it up, then the government is not permitted to invoke the deliberative process privilege or the attorney-client privilege to shield that information from the public. *See Tri-State Hosp. Supply Corp. v. U.S.*, 226 F.R.D. 118, 135 (D.D.C. 2005) ("[W]hen there is reason to believe that government misconduct has occurred, the deliberative process privilege disappears.") (additional citations omitted); *see also Alexander v. F.B.I.*, 193 F.R.D. 1, 10 (D.D.C. 2000) ("If there is any reason to believe the information sought may shed light on government misconduct, public policy (as embodied by the law) demands that the misconduct not be shielded merely because it happens to be predecisional and deliberative.") (internal punctuation, citation omitted).

respectfully request that the Court consider this new information in evaluating Defendants' claimed exemptions.

Thank you for your time and consideration.

Respectfully submitted,

Bridget P. Kessler
Clinical Teaching Fellow
Immigration Justice Clinic
Benjamin N. Cardozo School of Law
55 Fifth Avenue
New York, New York 10003
Tel: 212-790-0213
Fax: 212-790-0256

cc:

Joseph N. Cordaro, Christopher Connolly and Christopher B. Harwood, Assistant United States Attorneys, Southern District of New York (*by e-mail*)
    86 Chambers Street, 3rd Floor
    New York, New York 10007
    Joseph.Cordaro@usdoj.gov
    Christopher.Connolly@usdoj.gov
    Christopher.Harwood@usdoj.gov

Anthony J. Diana, Therese Craparo, Lisa R. Plush, Jeremy D. Schildcrout, Mayer Brown LLP (*by e-mail*)

Peter L. Markowitz, Immigration Justice Clinic, Benjamin N. Cardozo School of Law (*by e-mail*)

Sunita Patel, Center for Constitutional Rights (*by e-mail*)

Encl:

Exhibits A-E