## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NATIONAL DAY LABORER ORGANIZING NETWORK, CENTER FOR CONSTITUTIONAL RIGHTS, and IMMIGRATION JUSTICE CLINIC OF THE BENJAMIN N. CARDOZO SCHOOL OF LAW,<br>                    Plaintiffs,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT AGENCY, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, FEDERAL BUREAU OF INVESTIGATION, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, and OFFICE OF LEGAL COUNSEL,<br>                    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | No. 10 Civ. 3488 (SAS)(KNF)<br><br><br><br>**DECLARATION OF CRYSTAL RENE SOUZA** |

I, Crystal Rene Souza, depose and say as follows:

1. I am the Supervisory Freedom of Information Act (FOIA) Specialist for the Office of the General Counsel (OGC) at the U.S. Department of Justice, Executive Office for Immigration Review (EOIR). This declaration supplements and hereby incorporates my prior declarations submitted in this case, and is being submitted in support of EOIR's motion for partial summary judgment on the adequacy of its search for opt-out and Rapid Production List records, i.e., the records produced in the above-captioned litigation between August 2010 and February 2011.

2. On or about February 12, 2010, EOIR received a FOIA request from the National Day Laborer Organizing Network, Center for Constitutional Rights, and Immigration Justice Clinic of the Benjamin N. Cardozo School of Law (collectively, the "Plaintiffs"). The

request sought records relating to a Department of Homeland Security (DHS) immigration enforcement initiative called "Secure Communities."

3.   EOIR oversees the immigration courts and the immigration appeals process. EOIR generally receives its cases directly from the DHS enforcement personnel when the government is seeking the removal of aliens who are in the country without lawful status or who have committed some act, typically a criminal offense, that renders them removable. Enforcement strategies employed by DHS can create caseload increases for EOIR. Thus, EOIR is kept informed of DHS enforcement programs, such as Secure Communities, in order to plan for resources necessary to adjudicate its cases.

4.   After receiving Plaintiffs' FOIA request, the EOIR FOIA Service Center, in consultation with the agency attorney assigned to Plaintiffs' FOIA request, determined that most of the information Plaintiffs requested would be in the possession of defendant agencies other than EOIR. EOIR determined that most likely it would only have potentially responsive information to items in 1a, 1f, 2g, and 5a(iii) of the request. The EOIR FOIA Service Center also conferred with the Office of Planning, Analysis and Technology (OPAT) and determined that EOIR could not provide responsive information to item 3 of Plaintiffs' request seeking "Individual Records" that would be in an Immigration Court Record of Proceeding, because the Case Access System for EOIR (CASE)[1] database does not contain any case identifier for the Secure Communities program; therefore, EOIR cannot identify which cases may relate to the Secure Communities program.

---

[1] CASE is an electronic database. It consists of searchable fields containing case information about immigration proceedings before the Immigration Court and Board of Immigration Appeals (BIA), such as the name of the respondent in immigration proceedings, his or her alien registration number, the court where the case is located, whether the respondent is *pro se*, the name of the respondent's representative, if any, etc. CASE does not contain a specific identifier for Secure Communities, i.e., it does not reflect whether an individual in immigration proceedings was identified by DHS through Secure Communities.

5. Nonetheless, the FOIA Service Center identified the following EOIR components as potentially possessing information responsive to Plaintiffs' request: the Office of the Chief Immigration Judge (OCIJ); the Board of Immigration Appeals (BIA); the Office of Legislative and Public Affairs (OLPA); and the Office of the General Counsel (OGC). The FOIA Service Center determined that the adjudicating components, OCIJ and BIA, were most likely to possess "Overview Documents" as described in 1a, information on the relationship between Secure Communities and other ICE enforcement programs as requested in 1f, and Notice to Appear information as requested in 2g; OLPA and OGC were most likely to possess "Communications" as described in 5a(iii).

6. The FOIA Service Center determined that the remaining components within EOIR — the Office of the Director (OOD), the Administration Division, the Office of Management Programs (OMP),[2] and the Office of the Chief Administrative Hearing Officer (OCAHO) — likely would not possess responsive information because these components do not adjudicate immigration removal proceedings and would therefore have little or no interaction with the Secure Communities program. Consequently, the FOIA Service Center did not provide Plaintiffs' FOIA request to these components. The FOIA Service Center also did not send the request to the individual immigration courts located throughout the United States because the mission of the courts is case-by-case adjudication, which was not a subject of the request. Moreover, any information regarding Secure Communities possessed by the immigration courts would have been disseminated by – and in the possession of – OCIJ, which did receive the FOIA request.

---

[2] OLPA, however, is a subcomponent of OMP, and, as stated in paragraph 5 above, it did receive the request because it was identified as likely to possess potentially responsive records.

7. On or about March 1, 2010, the EOIR FOIA Service Center distributed Plaintiffs' FOIA request to the agency components identified in paragraph 5, above. The FOIA Service Center also supplied these components with the agency's standard search memorandum, which requested that the FOIA points of contact (POCs) for each of the identified components coordinate searches for all records potentially responsive to Plaintiffs' FOIA request, including, but not limited to, paper records, electronic records, and emails.

8. Under standard agency practice, upon receipt of a FOIA request, the FOIA component POCs, working with management within the component, identify the employees whose responsibilities relate to the subject matter of the FOIA request, and task those employees with conducting searches. With respect to Plaintiffs' FOIA request, the POCs for the components identified in paragraph 5 tasked the following employees with conducting searches for potentially responsive records:

   • OCIJ: Assistant Chief Immigration Judges, Chief Clerk, Chief of Staff;

   • BIA: Board Members, Acting Board Members, and Senior Legal Advisors;

   • OPLA: OPLA Counsel and Public Affairs Specialists;

   • OGC: General Counsel, Deputy General Counsel, and Office Manager.

These employees then conducted manual searches of their paper records as well as electronic files contained in their individual Microsoft Outlook accounts; individual computer hard drives; Microsoft Office suite files including Microsoft Excel and PowerPoint; shared drives segregated by components; and electronic folders organized by business unit and individual users.[3] With respect to their searches of electronic records, the employees were instructed to employ search terms as appropriate to identify responsive records, but were not instructed to use any particular

---

[3] All individual records of this type are contained within JCON-II, EOIR's agency network system. EOIR does not have an email archiving system, nor does it have in place a means by which to run searches across JCON-II in its entirety without the assistance of specialized information technology staff.

search terms or given any further instructions. In accordance with the agency's standard FOIA practice, any potentially responsive records that these employees identified were gathered and provided in paper form to the FOIA Service Center.

9.  On or about May 6, 2010, prior to EOIR providing Plaintiffs with a response to their request, EOIR received notice that Plaintiffs had filed the instant lawsuit regarding their FOIA request in the United States District Court for the Southern District of New York. Subsequently, through its attorneys at the U.S. Attorney's Office for the Southern District of New York, EOIR negotiated with Plaintiffs over the scope of their broad request.

10. During a conference held on December 9, 2010, and subsequently in a scheduling order dated December 17, 2010, this Court ordered the defendant agencies, including EOIR, to: (1) produce to plaintiffs, by January 17, 2011, "opt-out records," defined as "records relating to the ability of states or localities to decline or limit participation in Secure Communities, including documents, memoranda, manuals, and communications referencing the technological capacity of ICE and the FBI to honor requests to opt-out, opt-in, or limit participation in Secure Communities;" and (2) produce to plaintiffs, by February 25, 2011, all remaining records responsive to plaintiffs' "Rapid Production List" ("RPL"), which listed certain types of records Plaintiffs sought on a priority basis. As part of the RPL requirements, EOIR was not required to produce records created by other defendant agencies. With respect to the opt-out records, the Court's order set a search cut-off date of October 15, 2010. EOIR applied that cut-off date to its searches for both opt-out and RPL records.

11. EOIR determined that it was unlikely to have any responsive opt-out records because the opt-out issue did not relate to any business or mission-related work of EOIR. Because EOIR was not involved with this aspect of the Secure Communities program, it was unlikely to uncover

any responsive documents. Nevertheless, EOIR directed custodians to gather all information related to or discussing Secure Communities in order to ensure that it did not possess any responsive information.

12. In response to the Court's order, the EOIR FOIA Service Center reviewed the records initially provided by the components and individual employees described in paragraphs 5 and 8 above in response to Plaintiffs' request as a whole. The names of 43 EOIR custodians appeared in these records. Although, as explained above, EOIR believed that it was unlikely to have any responsive opt-out records, the FOIA Service Center nonetheless determined that if EOIR had any such records, these would be the custodians most likely to have them. These 43 custodians were also directed to identify any additional EOIR employees who they believed possessed potentially responsive opt-out or RPL documents. The EOIR FOIA Service Center received responses from an additional nine employees who were identified in this manner.

13. Thus, a total of 52 EOIR employees ultimately searched for opt-out and RPL records. These 52 employees were located in the following components: OOD; OGC; BIA; OCIJ; OCAHO; the Administration Division; OMP; and OPAT. The individuals who conducted these searches were:

- OOD: former Director, Acting Director, Associate Director, Executive Secretariat, and support staff;

- OGC: General Counsel, former Acting General Counsel, Deputy General Counsel and Former Deputy General Counsel, Fraud and Abuse Prevention Counsel; and Chief Counsel for the Immigration Unit;

- OCIJ: Chief Immigration Judge, Deputy Chief Immigration Judge, Assistant Chief Immigration Judges identified as participating in discussions with DHS regarding Secure Communities, Chief Clerk, Chief of Staff, Legal Counsel, and support staff;

- OCAHO: Chief Administrative Hearing Officer and Deputy Chief Administrative Hearing Officer, Administrative Law Judge, and support staff;

- OPAT, OMP, and Administration Division: Assistant Directors, Deputy Assistant Directors, and Counsel for Public and Legislative Affairs, Public Affairs Specialists, and support staff.

14. EOIR's agency counsel sent a search request to each of the custodians described in paragraph 13 above, requesting that each custodian conduct a search for records that were potentially responsive to the opt-out issue or the RPL using a search cut-off date of October 15, 2010. The instructions provided guidance on: 1) the search terms they should use; 2) the types of records they should search; and 3) the requirement to preserve e-mails in a .pst format. The FOIA Service Center provided custodians with the following search terms: Secure Communities; SC; SCI; Alternative to Removal; ADT; DHS Enforcement Initiatives; Opt-Out; Opting-Out; Mandate; and Mandatory. The FOIA Service Center stated that searches should be full-text word searches and should not be limited to the titles of documents or the subject lines of emails. The instructions also stated that custodians should not limit their search to the suggested search terms if they believed that they had responsive documents that they could locate with other search terms. Finally, the FOIA Service Center also directed custodians to contact the EOIR help desk if they needed assistance or encountered any difficulty in completing the searches. EOIR did not provide further instructions, such as the

use (or non-use) of connectors, and the specific structure of each search was left to the discretion of the individual custodians, because the FOIA Service Center determined that these custodians would know how their files were organized and what was the best way to perform their search. The FOIA Service Center instructed the custodians to produce all responsive emails in electronic format. Finally, the custodians were given a copy of the litigation hold notice, described in paragraph 17 below, that provided further detail on the types of records involved.

15. The FOIA Service Center enlisted the services of OPAT Information Technology (IT) personnel to conduct the searches of five custodian accounts, including three people who were no longer in their positions at the General Counsel's office: the former Acting General Counsel, the former Immigration Unit Chief and the former Fraud Attorney; and the EOIR Director and BIA Chair who were on detail and not able to personally conduct a search. The IT contractor assigned to this matter spent 7.5 hours pulling information from back-up tapes and 31 hours reviewing the material to locate responsive information on shared drives, including email and stored files. To conduct the searches, the contractors used the terms listed in paragraph 14.

16. When questions arose, agency counsel provided additional instructions directing custodians to conduct a new search beginning from the date of their last search, which was conducted in response to the original search request as described in paragraph 8. If custodians were unsure when or whether they had conducted a search, they were instructed to conduct a new search.

17. As noted above, in addition to the search request described above, EOIR agency counsel provided the custodians with a copy of the original litigation hold notice issued in May 2010, which instructed employees to preserve information including, but not limited to, the

following: all documents, records, data, correspondence, notes, e-mails (including e-mails on a computer or personal digital assistant (PDA)), and other materials, whether official or unofficial, original or duplicates; spreadsheets, databases, calendars, voice messages, videos and/or photographs. Additionally, employees were advised to preserve the information in its original electronic form.

18. On December 21, 2010, agency counsel provided additional guidance to clarify that because EOIR was expanding the cut-off date for the search, custodians should update previous searches conducted in response to the original request. In this supplemental guidance, custodians were again directed to search all records that included evidence of the organization, functions, policies, or other activities of the agency.

19. EOIR's Supervisory FOIA Specialist and agency counsel monitored responses through e-mail and the creation of an excel spreadsheet, which listed each of the 52 custodians who produced opt-out and RPL records. The dates on which the custodians returned their searches were noted on the spreadsheet, as were the dates on which any material provided by each custodian was reviewed for responsiveness. The specific search terms used by the individual custodians were not tracked, although it was clear from the responses that the custodians were not unduly limiting their searches.

20. Upon completion of their searches, the custodians submitted all of the potentially responsive records they identified, including both hard copy and electronic records, to the EOIR FOIA Service Center. Several of the searches produced no records, but each of the relevant custodians affirmed that they conducted a search and provided a "no-record" response. Based upon the EOIR FOIA Service Center's subsequent page-by-page review of the documents, EOIR's custodians complied with the FOIA Service Center's instructions and did

not limit their searches to the titles of documents or the subject lines of e-mails, other electronic files or paper documents. In addition, the production of hard copy documents indicated that custodians also conducted searches and produced documents from files located on their individual computer accounts and from hard copy file systems within their components.

21. After reviewing the information collected, the EOIR FOIA Service Center determined that the bulk of the information was non-responsive. EOIR identified a total of four responsive opt-out documents, totaling 27 pages, and produced those documents to the Plaintiffs on January 17, 2011.

22. EOIR did not locate any information responsive to the RPL. This determination was made based on a page-by-page review by agency counsel of all of the responsive information provided to the FOIA Service Center by the 52 custodians, including documents potentially responsive to the request as it was originally submitted. Counsel sorted the electronic information into responsive and non-responsive material, first by eliminating records that post-dated October 15, 2010, and then by reviewing subject lines to reduce the amount of material that was subject to a full line-by-line review. The remaining potentially responsive records were then reviewed in their entirety for responsiveness to the RPL. Because EOIR does not have any electronic discovery tools, it did not rely on any technical support to conduct its review.

23. EOIR properly identified key custodians and conducted a headquarters-wide search. In addition, by tracking responses to the request, EOIR adopted a process to ensure that searches were conducted by each of the key custodians. The search was conducted by each custodian based on a set list of terms and any additional terms likely to generate responsive

information.  This process was reasonably designed and ultimately identified responsive records.

24. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Crystal Rene Souza
Supervisory FOIA Specialist
Executive Office for Immigration Review

March 2, 2012

11