UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
NATIONAL DAY LABORER ORGANIZING
NETWORK, CENTER FOR CONSTITUTIONAL
RIGHTS, and IMMIGRATION JUSTICE
CLINIC OF THE BENJAMIN N. CARDOZO
SCHOOL OF LAW,

ECF CASE

10 CV 3488 (SAS)(KNF)

[Rel. 10-CV-2705]

*Plaintiffs*,

v.

UNITED STATES IMMIGRATION
AND CUSTOMS ENFORCEMENT AGENCY,
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,
FEDERAL BUREAU OF INVESTIGATION,
EXECUTIVE OFFICE FOR IMMIGRATION
REVIEW, and OFFICE OF LEGAL COUNSEL

*Defendants*.
-----------------------------------------------------------------X

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON ADEQUACY OF DEFENDANTS' SEARCH FOR OPT-OUT AND RAPID PRODUCTION LIST RECORDS

| | | |
|---|---|---|
| SONIA R. LIN | SUNITA PATEL | ANTHONY J. DIANA |
| PETER L. MARKOWITZ | GHITA SCHWARZ | THERESE CRAPARO |
| Kathryn O. Greenberg | Center for Constitutional | JEREMY D. SCHILDCROUT |
| Immigration Justice Clinic | Rights | JARMAN D. RUSSELL |
| Cardozo School of Law | 666 Broadway, 7th Floor | BRIDGET P. KESSLER |
| 55 Fifth Avenue | New York, New York 10012 | |
| New York, New York 10003 | | Mayer Brown LLP |
| | *Attorneys for Center for* | 1675 Broadway |
| *Attorneys for Immigration* | *Constitutional Rights* | New York, New York 10019 |
| *Justice Clinic and National* | *and National Day Laborer* | |
| *Day Laborer Organizing* | *Organizing Network* | *Attorneys for National Day* |
| *Network* | | *Laborer Organizing Network* |

## TABLE OF CONTENTS

Table of Authorities ................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT .................................................................................................................2

    I.      The Legal Standard Plaintiffs Apply, even for ESI, is
            the well-established "Reasonable" Standard in FOIA ......................................2

    II.     Defendants' Reasoning for Limiting Custodians
            and Search Locations Fails ................................................................................5

            A.  Federal Bureau of Investigation ...............................................................6

            B.  Department of Homeland Security ...........................................................7

            C.  Immigration and Customs Enforcement ..................................................9

            D.  Office of Legal Counsel ..........................................................................10

CONCLUSION ............................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

*Int'l Counsel Bureau v. United States DOD,*
657 F. Supp. 2d 33 (D.C. Cir. 2009)...................................................................5

*Iturralde v. Comptroller of Currency,* 315 F.3d 311 (D.C. Cir. 2003)................3

*Loomis v. DOE*, No. 96-cv-149,
1999 U.S. Dist. LEXIS 23025 (N.D.N.Y Mar. 9, 1999).......................................5

*Morley v. CIA*, 608 F.3d 1108 (D.C. Cir. 2007) .................................................2

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990) ............................2

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
685 F. Supp. 2d 456 (S.D.N.Y. 2010).................................................................3

*Prison Legal News v. Lappin*, 603 F. Supp. 2d 125 (D.D.C. 2009) ....................5

*Valencia-Lucena v. U.S. Coast Guard*,
180 F.3d 321 (D.C. Cir. 1999)............................................................................2

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
250 F.R.D. 251 (D. Md. 2008)............................................................................3

*Zubulake v. UBS Warburg, LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003)................ 3-4

**ADDITIONAL SOURCES**

Business Wire, "Former Senior FBI Official Louis E. Grever
Joins IntegenX Board of Directors," March 28, 2012, *available at:*
http://www.businesswire.com/news/home/20120328005378
/en/Senior-FBI-Official-Louis-E.-Grever-Joins..............................................7

**PRELIMINARY STATEMENT**

Over a year ago, this Court found that the public's need for Opt Out and RPL Records[1] from Defendants warranted a Court order to search and release such records. Defendants did not work with Plaintiffs to construct a search that would be "reasonably calculated to uncover all relevant records" (the well-established standard under FOIA), jeopardizing the public's right to records that could have impacted an important policy debate. Defendants' reply repeatedly mischaracterizes Plaintiffs' arguments, or ignores the detailed declaration of Plaintiffs' expert on electronic searches, instead of meaningfully addressing Plaintiffs' detailed allegations of inadequacies in Defendants' search methodology for the Opt Out and RPL Item VII records.

*First*, Defendants misconstrue Plaintiffs' proposal for evaluating the search for ESI as proposing a "new standard" that mandates a one-size-fits-all approach to the electronic search process. Defs. Opp. at 1, 5. This is false. Plaintiffs are asking this Court to apply the established FOIA standard to ESI searches on a case-by-case basis, because the specific context is central to determine the adequacy of a search for ESI. *See generally* Regard Decl. In an age when the vast amount of government policy is reflected in electronic documents, Defendants' narrow reading of the "reasonably calculated" standard for ESI is inexcusable and thwarts the purpose of FOIA.

*Second,* Defendants contend that Plaintiffs seek every responsive record. Plaintiffs do not. Instead, Plaintiffs seek only searches that are *reasonably calculated* to uncover all relevant documents. Defendants have not met their burden.

*Third*, Plaintiffs have identified far more than a "handful of discrete areas" where the agencies should have searched more thoroughly. Defs. Opp. at 1. Rather than addressing every potential deficiency, however minor, Defs. Opp. at 4, Plaintiffs have attempted to focus on the

---

[1] The defined terms and abbreviations in Plaintiff's Opposition Brief are used herein.

1

most egregious issues and target key areas for the sake of efficiency.

*Finally*, Defendants fail to rebut the abundant factual record Plaintiffs provided in support of their motion for partial summary judgment seeking further searches of a limited number of custodians or offices and specific data sources for previously searched custodians. Defendants provide little evidence supporting their oft-repeated but nonetheless conclusory statement that Plaintiffs' evidence does not rise above "mere speculation" that certain offices or individuals were likely to maintain responsive Opt Out or RPL records.

Partial summary judgment should be granted in Plaintiffs' favor.

## ARGUMENT

### I.  The Legal Standard Plaintiffs Apply, even for ESI, is the well-established "Reasonable" Standard in FOIA

Defendants misconstrue the legal standard Plaintiffs apply. To prevail on a motion for adequacy of search, the agency, not the FOIA requester, "must show beyond material doubt [] that it has conducted a search reasonably calculated to uncover *all* relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal quotations omitted) (emphasis added). The parties agree that to conduct a reasonable search, Defendants first must "perform a search of all places it knew 'likely to turn up the information requested.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). Despite agreeing on this standard, Defendants wrongly claim that Plaintiffs seek to impose a new, one-size-fits-all, unduly burdensome standard. *See* Defs. Opp. at 2-6.

*First*, Plaintiffs agree with Defendants that FOIA does not require unduly burdensome or "perfect" searches. *Compare* Defs. Opp. at 2, 7, 16 *with* Pls. Br. at 6-8. Nor do Plaintiffs argue that the "fruits of the search" are the sole mechanism for evaluating adequacy of the search. Defs. Opp. at 3. Instead, Plaintiffs argue that FOIA courts should examine the agency

declarations and assess whether the agency has met its burden of establishing that its search methodology and process was reasonably calculated to uncover all relevant records. *See* Pls. Br. at 7-9. Courts may also consider "countervailing evidence" provided by the plaintiff, including documents an agency failed to produce as well as other public sources, to make logical inferences to determine whether a FOIA plaintiff has shown by more than mere speculation that certain custodians or locations should have been searched. *Id. See infra* Part II.[2]

*Second*, Plaintiffs do not suggest the agencies must provide "granular" or unreasonable level of detail in their declarations. Defs. Opp. at 4. Instead, Plaintiffs identify specific information that would help the Court and Plaintiffs determine whether the search was adequate and how to construct future searches, a request that is well supported by FOIA case law, FOIA legislative history and common sense. *See* Pls. Br. at 6-12.[3]

---

[2] Defendants incorrectly rely on *Iturralde v. Comptroller of the Currency*, 315 F.3d 311 (D.C. Cir. 2003), to dismiss Plaintiffs' numerous examples of additional responsive yet unproduced records as speculation. Defs. Opp. at 3, 4. According to *Iturralde*, "a court may place significant weight on the fact that records search failed to turn up a particular document in analyzing the adequacy of a records search." 315 F.3d at 315. Moreover, in contrast to the facts in *Iturralde*, Plaintiffs challenge the adequacy of the search methods described in the agencies' declarations and identify numerous specific examples, including documents from this case and the public record, showing why certain offices, custodian or other information sources not searched would have responsive records from the relevant time period. Pls. Br. at 13-26; *see also infra* Part II. The Court should weigh these examples heavily.

[3] Courts routinely consider a party's technology and search processes when assessing whether the electronic search process is reasonable. *See, e.g., Zubulake v. UBS Warburg, LLC*, 217 F.R.D. 309, 324 (S.D.N.Y 2003) (finding the responding party's computer system, both active and stored data, necessary); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 473 & n.68 (S.D.N.Y. 2010) (considering the instructions provided and the level of attorney supervision of individual employees); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 260 n.10 (D. Md. 2008) (considering the plaintiff's failure to describe expertise of individuals who constructed electronic keyword searches; the rationale for keyword selection; and the details of search implementation). Because civil discovery jurisprudence explains *how* the information requested helps courts assess the reasonableness of an electronic search, it provides support for the proposition that such information should be an integral part of a "reasonable description" of electronic searches under FOIA.

3

*Third*, nowhere do Plaintiffs suggest a "one-size-fits-all" standard for adequacy of search that moves away from a case-by-case inquiry or requires "micro manag[ing]" the executive branch." Defs. Opp. at 5, 15. Rather, Plaintiffs advocate a case-by-case and agency-by-agency approach to evaluate the search methodology. *See* Pls. Br at 13-27. Further, Plaintiffs agree that agency employees should apply knowledge of personal file systems or structures to construct searches, Defs. Opp. at 6, provided that their searches are reasonably calculated to uncover all potentially responsive records, Pls. Br. at 9-12. However, agency discretion in developing an adequate search is not absolute. Cooperation among the parties is not required, but generally helps agencies develop adequate searches. *See* Pls. Br. at 5-6. For example, the exclusion of obvious search terms is unreasonable. *See e.g.* Pls. Br. at 16 (FBI did not use terms such as "interoperability" or "IDENT/IAFIS" or "mandatory"). Moreover, the provision of vague instructions, without follow-up or assurances that offices likely to have responsive records actually conducted searches, is also unreasonable. *See, e.g.*, Pls. Br. at 15-17 (failure of FBI to provide adequate instructions or follow-up); 23-24 (failure of ICE to do same).

*Finally*, Plaintiffs do not ask the Court to order upgrades of technological systems, use of third-party vendors or searches incompatible with Defendants' technology. Defs. Opp. at 6, 7. Rather, Plaintiffs point to search method deficiencies and seek a limited number of additional searches and information to determine the need for other searches. *See* Pls. Br. 28-29. To request searches of reasonably accessible sources under Defendants' control, including archived sources, is reasonable and not an "extraordinary measure," as Defendants claim.[4] Defs. Opp. at 7.

---

[4] In *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003), the Court stated that the question of undue burden or expense "turns primarily on whether it is kept in an *accessible or inaccessible* format (a distinction that corresponds closely to the expense of production)." A search that omits a data source likely to contain relevant, non-unique records

4

Defendants' citation of *Prison Legal News v. Lappin*, 603 F. Supp. 2d 124, 127-28 (D.D.C. 2009), which rules only that agencies have no obligation to turn over documents outside their "possession or control," is inapposite. *See* Defs. Opp. at 9-10. Nowhere does *Prison Legal News* address an agency's obligation to turn over records in their possession or control.

## II.   Defendants' Reasoning for Limiting Custodians and Search Locations Fails

Plaintiffs are entitled to summary judgment based on their evidence that Defendants failed to search custodians and record sources likely to uncover all responsive records. *See*, *e.g.*, *Int'l Counsel Bureau v. United States DOD,* 657 F. Supp. 2d 33, 38-39 (D.D.C. 2009) (granting plaintiffs summary judgment where agency improperly limited its search to particular custodians and topics); *Loomis v. Dep't of Energy*, No. 96-CV-149, 1999 U.S. Dist. LEXIS 23025, at *11-12 (N.D.N.Y Mar. 9, 1999) (denying summary judgment where defendant did not search a location it conceded could possess responsive documents).

Rather than providing actual evidence that custodians were not engaged in the opt-out debate or that their involvement began after October 15, 2010, the Defendants suggest the Court completely disregard documents dated after October 15, 2010.[5] Defs. Reply at 10, 12, 13, 17.[6] However, documents dated after the cut-off date show the involvement of particular custodians or offices in issues related to Opt Out and RPL and, therefore, support an inference that the failure to search those custodians and offices was unreasonable.

---

cannot be reasonably calculated to uncover all relevant records because it will never uncover the records in the omitted data source. *See* Regard Decl. ¶¶ 18, 39.

[5] Defendants incorrectly state the FPL would only provide documents after October 15, 2010. Defs. Br. at 12. In fact, the FPL includes records starting September 1, 2010. *See* Stipulation and Order, July 12, 2011, Dkt # 100, at ¶5(b).

[6] Defendants boldly argue that a document dated October 7, 2010 may have been too close to the October 15th cut off date to have been received and processed for production. Defs. Opp. at 11. This point fails because the deadline for production was in January and there is no less obligation to produce a record created close to a cut off date.

### A. Federal Bureau of Investigation

Far from "mere[ly] speculat[ing]," Defs. Opp. at 12-14, Plaintiffs make a strong showing that several high-level officials and FBI offices were involved in Secure Communities (or "biometric interoperability," as the program is known to the FBI)[7] and the opt-out controversy and therefore should have been searched. *See* Pls. Br. at 13-15 and supporting exhibits. Defendants seem to concede that some of the FBI's unsearched custodians and offices *are* involved with Secure Communities, but contest their involvement during the time period for which Opt Out and RPL records were produced. Defs. Opp. at 12. The FBI's supporting declaration states that Defendants had no reasonable basis to search additional locations within the Director's Office, OGC EAD, STB and OLEC. *See* Declaration of Dennis J. Argall ("Argall Decl.") ¶¶ 6-7. These statements contain little to no factual support.

For example, the FBI's support for its claims that the Director's Office became involved "later, when the opt-out issue became more prominent," Defs. Opp. at 12, is only a conclusory statement in a supplemental declaration. Argall Decl. ¶ 6. The new declaration does not refute Plaintiffs' evidence that the Director's Office was involved with Secure Communities or interoperability from as early as 2006 and throughout the opt-out controversy. *See* Patel Decl. Ex. B, Docs. ##5, 6, 12, 13, 17, 19, 25, 27-30, 32, 39, 62, 64. Nor do Defendants identify when the Director became involved; to the contrary, the FBI concedes some offices within the Director's Office received the FBI search memo. Defs. Opp. at 12 n.5.

Defendants also fail to address Plaintiffs' showing that the Director adopted the Advisory Policy Board's 2009 recommendation to link the FBI and DHS databases, a critical factor in the decision to make Secure Communities mandatory. *See* Pls. Br. at 13; Patel Decl. Ex. B, Docs. ##

---

[7] Defendants erroneously suggest a document which discusses an "interoperability" meeting between DHS Secretary and FBI Director is not relevant. Defs. Opp. at 13.

1, 2, 4, 5, 13, 22, 25. Further, in asserting that the Director's Office did not interact with the IIU within the CJIS during the "time period in question," Argall Decl. ¶ 6, they fail to account for the FBI Director's involvement in Secure Communities/biometric interoperability without the participation of the IIU. *See* Pls. Br. at 14; Patel Decl. Ex. B, Docs. ## 5, 13, 27, 39, 64. A reasonable search would have included members of the Director's Office, Pls. Br. at 6-8, 14,[8] especially in light of Defendants' obligation to construe FOIA liberally. *See* Pls. Br. at 7-8.

Defendants similarly suggest that the lack of contact with CJIS justifies the FBI's decision to limit searches of the OGC, EAD STB and OLEC. *See* Argall Decl. ¶¶6-7. This again ignores the independent role such custodians likely had with interoperability/Secure Communities. *See* Pls. Br. at 14-15; Patel Decl. Ex. B Docs. ## 10, 20, 28-30, 44, 63, 65. Rather than counter-evidence, the FBI provides only a conclusory statement that the IIU's dealings with only one attorney within OGC's AIU makes the FBI's decision not to search more broadly within the AIU and OGC reasonable.[9] Argall Decl. ¶¶6-7. Similarly, although some of the STB EAD's subordinates within CJIS did not have responsive records, Argall Decl. ¶7, STB encompasses all of CJIS, and EAD Louis Grever was "responsible for all of the FBI's forensic, biometric, and applied technology support to law enforcement"[10] during the relevant time period.

B. **Department of Homeland Security**

DHS does not overcome Plaintiffs' arguments for summary judgment. Contrary to

---

[8] Plaintiffs limit their request for searches within the Director's Office to the Director, Deputy Director, Associate Deputy Director, Chief of Staff and Senior Counsel. *Id.* at 14, 28.

[9] Several documents support Plaintiffs' request to search certain OGC custodians. *See e.g.* Patel Decl. Ex. B, Docs #44 (showing that high level late-August 2010 meeting between FBI and DHS was significant where the FBI sought to implement the June 2009 APB decision).

[10] Business Wire, "Former Senior FBI Official Louis E. Grever Joins IntegenX Board of Directors," Mar. 28, 2012, available at http://www.businesswire.com/news/home/20120328005378/en/Senior-FBI-Official-Louis-E.-Grever-Joins. *See also* Pls. Br. at 14; Patel Decl. Ex. B, Docs. ## 20, 28-30.

7

Defendants' arguments, Defs. Opp. Br. at 15-16, David Palmer's supporting declaration ("Palmer Decl.") provides a confusing and contradictory account of the Secretary's records. While DHS asserts that the Executive Secretariat searched "[a]ll documents sent to and from the Office of the Secretary, including the Secretary herself," Palmer Decl. ¶ 30, "documents sent to or from the Secretary" are likely not to encompass *all* the documents the Secretary possessed or created. The declaration suggests a narrow search of the Secretary's electronic records and admits to a failure to monitor or test the use of search terms. *Id.* at ¶¶ 30, 33. The Chief of Staff, Deputy Chief of Staff and the Counselor to the Secretary searched their paper files, but no mention of a search within the *Secretary's* paper files. *Id.* at ¶ 30. Also, Palmer relied upon an unknown source to conclude that "searches focus[ing] primarily upon emails contained in Microsoft Outlook and the Enterprise Vault" were sufficient.[11] *Id.* Because DHS concedes the Secretary's records were likely to uncover responsive records, these deficiencies warrant summary judgment in favor of the Plaintiffs. *See also* Pls. Br. at 17-21.

Aside from stating that the four OGC personnel searched "were the only OGC personnel involved in matters that are at issue," Palmer Decl. ¶ 24, Defendants do not explain their failure to search the General Counsel, Principal Deputy General Counsel, or Deputy General Counsels' records. But Plaintiffs provided an email exchange dated August 27, 2010 through September 6, 2010 between Principal Deputy General Counsel David Martin and unknown recipients in which he describes conversations with ICE Director John Morton about the opt-out issue in California, including his intent to meet with the California Attorney General. Pls. Br at 18; Patel Decl. Ex.

---

[11] Moreover, if "all" relevant documents in the searches conducted by the Office of the Secretary were either emails or attachments to emails, and the searches "focused primarily" upon the emails contained in Microsoft Outlook and Enterprise Vault, it is unclear how the records searched could have belonged to the Secretary, given that she apparently does not have an email account. Palmer Decl. ¶ 33.

8

B, Doc. # 23. Plaintiffs also submitted an email exchange in which DHS General Counsel Ivan Fong references the October 2nd Mandatory Memo and OGC comments provided prior to October. Patel Decl. Ex. B, Docs. ## 45- 47. One of the emails clarifies that "Audrey," a Deputy General Counsel, was involved with those prior comments to the October memo. Patel Decl. Ex. B, Doc. #45. These documents demonstrate that limiting the search of OGC to four lower level custodians was not reasonable. With no factual dispute as to whether the General Counsel, Principal Deputy General Counsel or Deputy General Counsels were searched, summary judgment in favor of Plaintiffs is appropriate. *See also* Pls. Br. at 18, 28.

### C. Immigration and Customs Enforcement

ICE has little response to Plaintiffs' documentary support for summary judgment. ICE acknowledges its search was not calculated to uncover all responsive records because it is now searching for the Deputy Director's emails. *See* Defs. Opp. at 8 n.4.[12] Further, if indeed Defendants meant "every staff member" to include *outside* contractors, *see* Defs. Opp. at 8 (citing Law Dec. ¶ 37), Defendants must submit a supplemental agency declaration describing which ICE contractors are considered "staff members" and thus included in the search, and clarify whether any types of outside contractors were not included in the search. Next, ICE states that Plaintiffs did not show why OSLTC custodians other than the two searched were likely to have responsive records. Defs. Opp. at 9. But Plaintiffs submitted ample documentary evidence that high-level officials and regional points of contact were directly involved in opt-out issues. *See* Patel Decl. Ex. B, Docs. ##37, 50, 53, 60, 72.[13]

---

[12] Plaintiffs note the ICE Deputy Director will search only emails and Defendants have not conferred with Plaintiffs regarding search terms.

[13] OSLTC was critical to the outreach between ICE and local or state officials. Records produced six days before Plaintiffs' moving brief deadline further support a broader search of OSLTC. *See also* Decl. of S. Patel in Support of Pls. Reply, Apr. 16, 2011, Ex. A, (discussing

### D. Office of Legal Counsel

Far from offering "no basis" for the assumption that current OLC staff had not remembered or failed to respond to one request for responsive documents, Defs. Opp. at 20, Plaintiffs have pointed to Defendants' own admissions regarding faulty memories, failure to require searches, and refusal to follow up when staff did not affirmatively respond to queries. Pls. Br. at 25-26. Given that later responses of two Attorney-Advisors produced drafts of "Secure Communities"-related documents, Defendants should have required current staff to search for responsive documents or to affirm that they did not have any. *Id.*

Defendants similarly fail to provide any legitimate justification for failing to include in OLC's lists of search terms the terms "opt out" and "opt-out" or the various acronyms for "Secure Communities" such as "S-Comm." OLC staff claiming lack of familiarity with the obliquely named "Secure Communities" program may not have realized the connection between the program and the opt-out controversy, government information-sharing, or immigration enforcement. Contrary to Defendants' conclusory argument, Defs. Opp. at 21-22, it is reasonable to assume that the OLC could possess responsive documents that did not spell out the words "secure communities" and instead dealt with the issues central to the Plaintiffs' request.

### CONCLUSION

For all these reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for Partial Summary Judgment and grant Plaintiffs' Cross-Motion for Partial Summary Judgment.

Dated: April 16, 2012
       New York, New York

---

meeting OSLTC set up and led in January 2011 in Boston which included Senior Public Engagement Officer and HSI); *Id.* at Ex. B (providing OSLTC's calendar of outreach efforts by Assistant Director of OSLTC; includes Chief of Staff in email chain).

Respectfully submitted,

/s/
SUNITA PATEL
GHITA SCHWARZ
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, New York 10012
Tel: 212-614-6439
Fax: 212-614-6499
spatel@ccrjustice.org
gschwarz@ccrjustice.org

*Attorneys for CCR and NDLON*

/s/
SONIA LIN
PETER MARKOWITZ
Immigration Justice Clinic
Benjamin N. Cardozo School of Law
55 Fifth Avenue
New York, New York 10003
Tel: 212-790-0213
Fax: 212-790-0256
slin@yu.edu
pmarkowi@yu.edu

*Attorneys for IJC and NDLON*

/s/
ANTHONY J. DIANA
THERESE CRAPARO
JEREMY D. SCHILDCROUT
JARMAN D. RUSSELL
BRIDGET P. KESSLER
Mayer Brown LLP
1675 Broadway
New York, New York 10019
Tel: 212-506-2500
Fax: 212-262-1910
adiana@mayerbrown.com
tcraparo@mayerbrown.com
jschildcrout@mayerbrown.com
jrussell@mayerbrown.com
bkessler@mayerbrown.com
*Attorneys for NDLON*

11